470 A.2d 1339

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Richard M. MIKULAN, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 1983.

Decided Dec. 30, 1983.

Robert L. Eberhardt, Deputy Dist. Atty., Joel M. Kaufman, William A. Behe, Deputy Atty. Gen., Harrisburg, Eric B. Henson, Deputy Dist. Atty., Philadelphia, William H. Platt, Dist. Atty., Allentown, for appellant.

Karyn Ashley Rok, Pittsburgh, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

LARSEN, Justice.

This appeal challenges the constitutionality of the "new drunk driving law," 75 Pa.C.S.A. § 3731(a)(4), one of several additions to the Motor Vehicle Code enacted by the General Assembly on December 15, 1982.[1]  Section 3731(a)(4) provides in relevant portion:

1. Act of December 15, 1982, P.L. 1268, No. 289 § 9, effective in 30 days.  Also added by this Act were 75 Pa.C.S.A. § 3715 (restriction on

**Driving under the influence of alcohol or controlled substance:**

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

. . . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

On April 4, 1983, Pittsburgh police officers observed a near collision between a Trailways bus and a vehicle operated by Richard Mikulan, appellee, following which, the two drivers alighted from their vehicles and began to argue. One of the officers approached the two men and observed appellee arguing loudly and detected a strong odor of alcohol on his breath. The officer also observed that appellee had difficulty with his words (stuttering) and had stumbled while walking.

Based on these observations, the officer arrested appellee and a breathalyzer test was administered. Chemical analysis revealed that appellee's blood alcohol content by weight was 0.13%. Appellee was then charged with violation of section 3731(a)(4) of the Act.[2]

On July 20, 1983, oral argument was heard by the Honorable John J. Bodley[3] on appellee's motion to dismiss the information.[4] Following argument, Judge Bodley granted

alcoholic beverages), § 3732 (homicide by vehicle), and § 3735 (homicide by vehicle while driving under influence).

2. Appellee was also charged with violation of § 3731(a)(1), "A person shall not drive, operate or be in actual physical control of the movement of any vehicle while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving...." The district justice dismissed this charge at the preliminary hearing, however.

3. Judge Bodley, Visiting Senior Judge, Northumberland County, was specially sitting in Allegheny County.

4. Appellee also filed and argued a motion for suppression of evidence. The court found probable cause to arrest appellee and to administer the breathalyzer test, and so denied the motion for suppression of evidence. This ruling is not presently at issue.

appellee's motion and declared section 3731(a)(4) unconstitutional, finding it void for vagueness. This direct appeal followed, and we reverse.[5]

Our analysis begins with the strong presumption of constitutionality and the heavy burden of pursuasion upon one who challenges the constitutionality of an Act of the General Assembly. *Snider v. Thornburgh*, 496 Pa. 159, 166, 436 A.2d 593, 596 (1981); *Commonwealth v. Barnes and Tucker Co.*, 472 Pa. 115, 123, 371 A.2d 461 (1977), *appeal dismissed* 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977). Accordingly, legislation will not be declared unconstitutional unless it "clearly, palpably and plainly" violates the constitution. *Snider v. Thornburgh, supra; Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 16, 331 A.2d 198 (1975).

Moreover, it has been said that probably the most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and welfare, and it is true that, to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. *Gambone v. Commonwealth*, 375 Pa. 547, 550–51, 101 A.2d 634 (1954); *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957) ("deep in our law ... is the principle that of all the powers of local government, the police power is 'one of the least limitable.'" (citation omitted)). The police powers of the Commonwealth are particularly broad in matters pertaining to the safety and efficient functioning of the highways, *Maurer v. Boardman*, 336 Pa. 17, 7 A.2d 466 (1939), *aff'd sub nom.* 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940) *and Mackey v. Montrym*, 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979),[6] and are perhaps strong-

5. Jurisdiction of this appeal is pursuant to 42 Pa.C.S.A. § 722(7), direct appeals from courts of common pleas in matters wherein the lower court has declared a statute of this Commonwealth invalid as repugnant to the Constitution of the United States or of this Commonwealth.

6. In *Mackey v. Montrym*, 443 U.S. at 17, 99 S.Ct. at 2620, Chief Justice Burger recognized the "paramount interest the Commonwealth has in

est in matters pertaining to the sale, consumption and regulation of alcoholic beverages. *California v. LaRue*, 409 U.S. 109, 114–15, 93 S.Ct. 390, 395–96, 34 L.Ed.2d 342 (1972); *Commonwealth v. Koczwara*, 397 Pa. 575, 580, 155 A.2d 825 (1959) ("Not the least of the legitimate police power areas ... is the control of intoxicating liquor."); *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). With section 3731(a)(4), the legislature has exercised its broad police powers in these areas in an attempt to halt, or at least to retard, the wanton and senseless slaughter of and injury to innocent people upon our highways caused by drunk drivers. In *South Dakota v. Neville, supra*, the United States Supreme Court recently rejected a claim that the admission into evidence of an alleged drunk driver's refusal to submit to a blood-alcohol test violates his Fifth Amendment privilege against self-incrimination. In so holding, that Court stated:

> The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy. See *Breithaupt v. Abram*, 352 US 432, 439, 1 L Ed 2d 448, 77 S Ct 408 [412] (1957) ("The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield"); *Tate v. Short*, 401 US 395, 401, 28 L Ed 2d 130, 91 S Ct 668 (1971) (Blackmun, J., concurring) (deploring "traffic irresponsibility and the frightful carnage it spews upon our highways"); *Perez v. Campbell*, 402 US 637, 657 and 672, 29 L Ed 2d 233, 91 S Ct 1704 [1715 and 1722] (1971) (Blackmun, J., concurring) ("The slaughter on the highways of this Nation exceeds

preserving the safety of its public highways.... We have traditionally accorded the states great leeway in adopting summary procedures to protect health and safety. States surely have at least as much interest in removing drunken drivers from their highways as in summarily seizing mislabelled drugs or destroying spoiled food stuffs."

the death toll of all our wars"); *Mackey v. Montrym,* 443 US 1, 17–18, 61 L Ed 2d 321, 99 S Ct 2612 [2620–2621] (1979) (recognizing the "compelling interest in highway safety").

459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748. In *Mackey v. Montrym, supra,* Chief Justice Burger noted that traffic deaths commonly exceed 50,000 annually in the United States, and that approximately one-half of these fatalities are alcohol related. 443 U.S. at 17, n. 9, 99 S.Ct. at 2621, n. 9. When we consider as well that over three-quarters of a million of human beings are seriously, and often permanently, injured and maimed as a result of alcohol related accidents, the emotional trauma and economic loss experienced by the victims and their families, and the millions of dollars of property damage, it is easy to see that society is faced with a problem of frightening and epidemic dimensions. In Pennsylvania, the grim alcohol related traffic accident statistics for 1982 are: 800 people killed in 684 traffic accidents; 19,499 people seriously injured in 12,508 accidents; and 20,155 vehicles damaged in accidents wherein at least one vehicle was damaged badly enough to require towing (this figure does not include those accidents where all cars could leave the scene under their own power). Source: Pennsylvania Department of Transportation, Bureau of Safety and Programming Analysis, 1982.

One of the solutions chosen by our legislature to combat this epidemic was to make it unlawful to drive, operate or physically control the movement of any vehicle while the amount of alcohol by weight in the blood is 0.10% or greater. It "is now virtually universally accepted that a person with a [blood alcohol percent] of 0.10 should not be driving." *Burg v. People,* 144 Cal.App.3d 169, 192 Cal. Rptr. 531, 534 (1st Dist.1983); *State v. Franco,* 96 Wash.2d 816, 639 P.2d 1320, 1323 (1982); *Roberts v. State,* 329 So.2d 296 (Fla.1976); *Greaves v. State,* 528 P.2d 805 (Utah 1974). In upholding a similar statute against constitutional challenge, the Supreme Court of Washington observed:

The genesis of this law apparently began when the United States Department of Transportation, in February 1979, produced an issue paper entitled "Alcohol Counter-measures Illegal Per Se and Preliminary Breath Testing." The issue paper encouraged state legislatures to enact "illegal per se laws" establishing, as a traffic offense, the operation of a motor vehicle with a BAC [blood alcohol content] equal to or in excess of a specified level, typically 0.1 percent. These statutes had been enacted in several states. Apparently as a result of the issue paper, the Washington legislature considered testimony from Dr. Ted Loomis, Ph.D., M.D., Professor of Pharmacology and Toxicology at the University of Washington. In a letter to Senator Dan Marsh, Dr. Loomis indicated, among other things, that there is an abundance of scientific support to indicate that with a BAC level of 0.1 percent, *all persons are significantly affected. At that level, all persons will have lost one quarter of their normal driving ability, some persons will have lost as much as one half of their normal driving ability and a few people will not be able to even sit up in the driver's seat.* Dr. Loomis concluded:

> the amount of alcoholic beverages necessary to produce a blood alcohol level of 0.1% is considerable and is believed by most people to represent abusive and excessive acute consumption of alcohol .... most people who drink alcoholic beverages will recognize that the consumption of more than 8 to 9 "drinks" (that is, a half pint of whiskey, or one and one-half six packs of beer, or a quart of natural wine) in two or three hours will produce subjective effects and impaired physical performance. Yet it is the consumption of approximately this amount of beverage that is required to produce a blood alcohol of 0.1% in the average adult.

The idea that 0.10% or more alcohol by weight in a person's blood represents an unacceptably high level of alcoholic consumption to permit driving dates back at least to November of 1960 when the House of Delegates of the

American Medical Association issued a policy statement to the effect that a blood alcohol content of 0.10% by weight should be accepted as *prima facie* evidence of intoxication. *See Commonwealth v. DiMarco*, C.P. Lycoming County, slip opinion of September 22, 1983 at 12.[7]

From all of the foregoing, it is beyond dispute that the General Assembly has a *compelling* interest in protecting the health and safety of the travelers upon our highways and roads against the ravage caused by drunken drivers, and that the means chosen to serve that interest—the *per se* Motor Vehicle Code violation contained in section 3731(a)(4)—is rationally and reasonably related to achievement of that legitimate goal. *See Maurer v. Boardman, supra.* However, our inquiry does not stop there for the police power is subject to constitutional limitations and judicial review. *Gambone v. Commonwealth, supra* at 375 Pa. 551, 101 A.2d 634; *Lambert v. California, supra* at 355 U.S. 228, at 78 S.Ct. 242.

The touchstone of due process is protection of the individual against arbitrary action of the government. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, ——, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). The principle aspect of the doctrine is the requirement that legislation establish minimal guidelines to govern law enforcement for, without such minimal guidelines, a criminal statute might permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilictions." *Id.* at ——, 103 S.Ct. at 1858, 75 L.Ed.2d at

7. In *DiMarco*, the Commonwealth presented a pathologist, one Dr. Freas, as an expert witness whose testimony parallels that of Dr. Loomis. Dr. Freas testified that a person whose blood alcohol content is 0.10% or greater is incapable of safe driving, and further testified that he knew of no expert medical opinion to the contrary. *Id.* at 12.

909 *quoting Smith v. Goguen,* 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974). In *Commonwealth v. DeFrancesco,* 481 Pa. 595, 393 A.2d 321 (1978), this Court applied the above principles to uphold a disorderly conduct/refusal to disperse statute, 18 Pa.C.S.A. § 5502, against a due process/vagueness challenge, and identified the "root of the vagueness doctrine" as a

> "rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited...."

481 Pa. at 608, 393 A.2d 321 *quoting Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

Similarly in *Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244 (1976), we held that a penal statute "must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction." 467 Pa. at 5, 354 A.2d 244. However, statutes alleged to be vague are not "to be tested against paradigms of draftsmanship. Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct." *Id.,* 467 Pa. at 6, 354 A.2d 244.

Appellee argues that section 3731(a)(4) exceeds the limitations of the due process clause of the Constitutions of the United States and of this Commonwealth; specifically, appellee contends that section 3731(a)(4) is void for vagueness because it fails to provide reasonable notice to the person of ordinary intelligence as to what conduct is proscribed. Viewed in light of the foregoing due process vagueness principles, however, it is obvious that appellee has fallen substantially short of carrying his burden of demonstrating either that section 3731(a)(4) fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute or that the section encourages

arbitrary and erratic enforcement.[8]  *Cf. Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).  The essence of appellee's argument is that section 3731(a)(4) "is vague because a person of ordinary intelligence performing the lawful act of consuming alcoholic beverages prior to driving has no reasonable way to ascertain beforehand when his blood alcohol level is about to reach the prohibited range."  Brief for appellee at 3.  Thus, "the individual is left to guess whether his conduct is permitted or proscribed."  *Id.*  Appellee would have us strike down this legislation, therefore, because the drinking driver is unable to precisely pinpoint that *last drop of alcohol* that will take him from the "permissible" range across the 0.10% line into the prohibited range.  Appellee's reasoning is overtly technical and misperceives the nature of the due process clause and the vagueness doctrine.

As the United States Supreme Court stated in holding that local ordinances prohibiting "noise or diversion" that could interfere with school sessions or classes were not unconstitutionally vague:

> Condemned to the use of words, we can never expect mathematical certainty from our language.  The words of the Rockford ordinance are marked by "flexibility and reasonable breadth rather than meticulous specificity."
>
> .      .      .      .      .
>
> Although the prohibited quantum of disturbance is not specified in the ordinance it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted....  Given this "particular context," the ordinance gives "fair notice to those to whom [it] is directed."

*Grayned v. City of Rockford,* 408 U.S. 104, 110, 112, 92 S.Ct. 2294, 2299, 2301, 33 L.Ed.2d 222 (1972).

**8.**  There is *no* room for argument that section 3731(a)(4) encourages arbitrary and erratic enforcement.  Not only is the discretion of policemen, judges and juries *limited* by ascertainable standards, law enforcement discretion is completely eliminated by this statutory scheme once the blood alcohol content is determined.

In some respects, appellee's argument is more of an "overbreadth" challenge, i.e., that the statute reaches too far and infringes upon constitutionally protected rights and activities such as the free expression of speech and ideas. *See Grayned v. City of Rockford, supra* at 114, 92 S.Ct. at 2302 *and Commonwealth v. Heinbaugh, supra* 467 Pa. at 4, 5, 354 A.2d 244. However, there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving and there is little doubt that the legislature could, if it so chooses, prohibit driving within a certain reasonable time after drinking *any* amount of alcohol (so long as the prohibition was rationally related to the legitimate legislative purpose). *California v. La-Rue, supra. See, e.g., Maurer v. Boardman, supra; Commonwealth v. Koczwara, supra; South Dakota v. Neville, supra.*[9] Instead, the General Assembly chose not to prohibit a moderate amount of drinking before driving but placed drivers on notice that if their alcohol consumption rendered the driver "incapable of safe driving", § 3731(a)(1), or produced a blood alcohol content by weight of 0.10% or greater, § 3731(a)(4), that driver would then be considered a risk to society and in violation of the Motor Vehicle Code.

While a person's ability to consume substantial quantities of alcohol prior to driving and remain within the bounds of the law may indeed have been "chilled" by section 3731(a)(4), this "chilling effect" on the person's "right" to drink to the cutting edge of sobriety is exactly what our legislature intended, is well within the police powers of the Commonwealth and is *not* proscribed by the due process clause.

> While doubts as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave respondent adequate warning.... Even as to more doubtful cases than that of respondent, we have said that *"the law is full of instances where a*

---

9. For example, the legislature could have tracked the Federal Aviation Administration rules and regulations which provide that no person may act as a crew member of a civil aircraft within eight hours after the consumption of any alcoholic beverage. FAR 91.11.

*man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.*

*United States v. Powell,* 423 U.S. 87, 93, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975) (citation omitted; emphasis added); *Commonwealth v. Heinbaugh, supra,* 467 Pa. at 5, 354 A.2d 244.

The legislature has squarely, and fairly, placed the risk of erroneous judgment of alcohol consumption on the person who has the choice, the drinking driver, rather than upon the unwitting and innocent victims of his or her erroneous judgment. Consider further the consequences of an erroneous judgment as to the blood alcohol content. Where the drinking driver errs on the side of caution and imbibes an amount of alcohol that keeps the blood alcohol content under 0.10%, that person has lost only some immediate gratification felt by the consumption of one or two additional drinks. He or she has foregone, perhaps, that "one for the road". If, however, the driver errs on the high side of the calculation, *i.e.* the blood alcohol content is greater than 0.10%, the possible and probable consequences to innocent people and society are tragically obvious. Moreover, the widespread availability of charts as a guide to the amount of alcohol that can safely be consumed by persons of varying weights has been judicially noticed in other jurisdictions. *See, e.g. State v. Franco, supra and Burt v. People, supra.* Similarly in Pennsylvania, the use of such charts, provided for instance by the Pennsylvania Liquor Control Board and the American Automobile Association and frequently published in newspapers and magazines, particularly near the holidays, can greatly ameliorate the relatively minor inconvenience to the drinking driver.

As in our recent cases upholding the constitutionality of section 3732, "homicide by vehicle", *Commonwealth v. Field,* 490 Pa. 519, 417 A.2d 160 (1980) *and Commonwealth*

_v. Burt,_ 490 Pa. 173, 415 A.2d 89 (1980), appellee's vagueness challenge _must_ be rejected.[10]

Appellee makes an additional argument closely related to the vagueness argument, namely, that section 3731(a)(4) is unconstitutional for failing to incorporate a _mens rea_ or criminal culpability requirement. _See Colautti v. Franklin,_ 439 U.S. 379, 395–96, 99 S.Ct. 675, 685–86, 58 L.Ed.2d 596 (1979). Initially, we must determine if, in fact, the legislature has indicated its intention with regard to a requirement of criminal culpability.

Section 3731(a)(4) has only two elements: 1) the driving, operating or physically controlling the movement of a vehicle and 2) the presence of an amount of alcohol by weight in the blood of 0.10%. While section 3731(a)(4) does not, by its terms, speak to a _mens rea_ requirement, the Crimes Code does. Section 302, 18 Pa.C.S.A. § 302, provides, in relevant portion:

**General requirements of culpability (a) Minimum requirements of <u>culpability.</u>—**

Except as provided in section 305 of this title ..., a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.

. . . . .

**(c) Culpability required unless otherwise provided.—**
When the culpability sufficient to establish a material

---

**10.** With one exception (_People v. Alfaro,_ 192 Cal.Rptr. 178 (Cal.App. 1st Dist.1983), the appellate courts of other states have uniformly upheld the validity of similar drunk driving legislation. _See, e.g., State v. Franco, supra_ (Washington); _Coxe v. State,_ 281 A.2d 606 (Del.1971); _Roberts v. State, supra_ (Florida); _Greaves v. State, supra_ 30 N.C.App. 45, (Utah); _Burg v. State, supra_ (California); _State v. Basinger,_ 30 N.C.App. 45, 226 S.E.2d 216 (1976); _State v. Gerdes,_ 252 N.W.2d 335 (S.D.1977); _State v. Ball,_ 264 S.E.2d 844 (W.Va.1980). At least five other courts of common pleas of this Commonwealth have also rejected the claim that section 3731(a)(4) is unconstitutional: _Commonwealth v. Zimmerman,_ C.P. Lebanon Co., October 5, 1983; _Commonwealth v. DiMarco,_ C.P. Lycoming Co., September 22, 1983; _Commonwealth v. Hernandez,_ C.P. Perry Co., March 18, 1983; _Commonwealth v. Speakes,_ C.P. Philadelphia Co., May 26, 1983; _Commonwealth v. Miller,_ C.P. Allegheny County, October 13, 1983.

element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

．　　．　　．　　．　　．

**(e) Substitutes for negligence, recklessness and knowledge.**—When the law provides that negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally.

．　　．　　．　　．　　．

**(h) Culpability as to illegality of conduct.**—Neither knowledge nor recklessness or negligence *as to whether conduct constitutes an offense or as to the existence, meaning or application of the law determining the elements of an offense* is an element of such offense, unless the definition of the offense or this title so provides. (emphasis added)

Section 305, 18 Pa.C.S.A. § 305, then limits the scope of these culpability requirements. This section provides:

**Limitations on scope of culpability requirements**

**(a) When culpability requirements are inapplicable to summary offenses and to offenses defined by other statutes.**—*The requirements of culpability prescribed by* section 301 of this title (relating to requirement of voluntary act) and *section 302 of this title … do not apply to*:

(1) *summary offenses,* unless the requirement involved is included in the definition of the offense or the court determines that its application is consistent with effective enforcement of the law defining the offense; *or*

(2) *offenses defined by statutes other than this title, in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof plainly appears.*

**(b) Effect of absolute liability in reducing grade of offense to summary offense.**—Notwithstanding any other provision of existing law and unless a subsequent statute otherwise provides:

(1) *when absolute liability is imposed with respect to any material element of an offense defined by a statute other than this title and a conviction is based upon such liability, the offense constitutes a summary offense; and*

(2) *although absolute liability is imposed by law with respect to one or more of the material elements of an offense defined by a statute other than this title, the culpable commission of the offense may be charged and proved, in which event negligence* with respect to such elements *constitutes sufficient culpability* and the classification of the offense and the sentence that may be imposed therefor upon conviction are determined by section 106 of this title (relating to classes of offenses) and Chapter 11 of this title (relating to authorized disposition of offenders). (emphasis added)

Finally, section 3731(e)(1) establishes the penalties for violations of subsection (a):

**Penalty.**—

(1) Any person violating any of the provisions of this section is guilty of a misdemeanor of the second degree and the sentencing court shall order the person to pay a fine of not less than $300 and serve a minimum term of imprisonment of:

(i) not less than 48 consecutive hours.

(ii) not less than 30 days if the person has previously been convicted of an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

(iii) not less than 90 days if the person has twice previously been convicted of an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

(iv) not less than one year if the person has three times previously been convicted of an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years.

For the purposes of construing the general requirements of culpability and its limitations, a summary offense under the Crimes Code or another title is an offense wherein a convicted person may be sentenced to a term of imprisonment of not more than 90 days. 18 Pa.C.S.A. § 106(c). Based on the foregoing provisions of the Crimes Code and the Motor Vehicle Code, the legislative intent seems clear. Where the prosecution does not charge and prove "the culpable commission of the [section 3731] offense," then, upon conviction, the defendant can, consistent with the Crimes Code, be sentenced to no more than 90 days imprisonment. 18 Pa.C.S.A. § 305(a)(1) and (b)(1). Where the prosecution does charge and prove "the culpable commission of the [section 3731] offense," then, upon conviction, the defendant can be sentenced to a term of imprisonment in excess of 90 days. 18 Pa.C.S.A. § 305(a)(2) and (b)(2). In the latter event, negligence with respect to the elements of the offense constitutes sufficient culpability under the Crimes Code. 18 Pa.C.S.A. § 305(b)(2). In *Commonwealth v. Field, supra,* this Court construed our "homicide by vehicle" statute, 75 Pa.C.S.A. § 3732, which defines that offense as "[a]ny person who unintentionally causes the death of another person while engaged in the violation of any law ... applying to the operation or use of a vehicle or to the regulation of traffic ... when the violation is the cause of death." In that case, we stated: "Consistent with the culpability requirement, section 3703 [the underlying traffic offense charged] leaves for determination at trial whether appellee *knew, or should have known,* he engaged in the conduct claimed to be in violation of that section." 490 Pa. at 525, 417 A.2d 160. (emphasis added). It is *not* required that the prosecution prove that the defendant knew or should have known that his or her blood alcohol content was 0.10% or greater. The Crimes Code provides

that neither "knowledge nor recklessness or negligence as to whether conduct constitutes an offense or as to the existence, meaning or application of the law determining the elements of the offense is an element of such offense....". 18 Pa.C.S.A. § 302(h). Thus, the requisite culpability for a violation of section 3731 (where the prosecution charges and seeks to prove the culpable commission of the offense) will be established where the Commonwealth demonstrates that the defendant knew, or should have known, that he or she was 1) driving, operating or physically controlling the movement of the vehicle, and 2) consumed alcoholic beverages prior to driving.[11]

Having found that the legislature intended to impose absolute liability for violations of section 3731 resulting in convictions and sentences of 90 days or less where the prosecution has failed to charge or prove culpability, we must now determine if absolute liability in these circumstances is permissible. In *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957), the United States Supreme Court stated:

> We do not go with Blackstone in saying that a "vicious will" is necessary to constitute a crime, 4 Bl. Comm. 21, *for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition.*

(emphasis added). This latitude is greatest where the legislature seeks to regulate activities under the police powers of government. *Id.* at 228–29, 78 S.Ct. at 242–43.

By enactment of section 3731, the General Assembly has imposed liability upon the commission of certain dangerous acts wherein the actor has received fair and adequate notice as to what conduct is proscribed. The lack of a *mens rea* requirement *may* exacerbate the problems caused by a vague statute which fails to give fair notice or to set forth sufficiently normative standards of conduct, which problem

---

11. Of course, the burden of demonstrating the requisite culpability can be met by circumstantial evidence.

is more pressing when the statute infringes upon constitutionally protected rights. *Colautti v. Franklin*, 439 U.S. 379, 395–96, 99 S.Ct. 675, 685–86, 58 L.Ed.2d 596 (1979); *Lambert v. California, supra.* Such is not the case here. The legislature, pursuant to its broad police powers to regulate the use of the highways and alcoholic beverages, has infringed upon no constitutionally guaranteed rights or privileges and has clearly and precisely enumerated ascertainable standards of conduct.

We note that our Superior Court has correctly and consistently held, in appeals from convictions under the Motor Vehicle Code, that the legislature, by virtue of its police power, may define a crime so that proof of criminal intent, *mens rea*, is not necessary. *Commonwealth v. Hennemuth*, 294 Pa.Super. 360, 364, 439 A.2d 1241, 1243 (1982). *Commonwealth v. Black*, 251 Pa.Super. 539, 380 A.2d 911 (1977); *Commonwealth v. Nugent*, 315 Pa.Super. 493, 462 A.2d 699 (1983).

*Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825 (1959), relied upon by appellee, does not require a contrary result. In that case, we were concerned only with the question of whether the legislature could imprison a defendant on a theory of *vicarious* liability for the acts of an employee who violated provisions of the Liquor Code, and we answered in the negative. 397 Pa. at 584–85, 155 A.2d 825. However, we explicitly recognized in *Koczwara* that:

In recent decades, however, many states have enacted detailed regulatory provisions in fields which are essentially non-criminal, e.g., pure food and drug acts, speeding ordinances, building regulations, and child labor, minimum wage and maximum hour legislation. Such statutes are generally enforceable by light penalties, and although violations are labelled crimes, the considerations applicable to them are totally different from those applicable to true crimes, which involve moral delinquency and which are punishable by imprisonment or another serious penalty. Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administra-

tion as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt. It is here that the social interest in the general well-being and security of the populace has been held to outweigh the individual interest of the particular defendant. The penalty is imposed despite the defendant's lack of a criminal intent or mens rea.

Not the least of the legitimate police power areas of the legislature is the control of intoxicating liquor.

397 Pa. at 580, 155 A.2d 825. *Koczwara* did not prohibit imprisonment for *personal* liability for violations of "essentially regulatory provisions" and our subsequent cases have made it clear that *Koczwara* merely prohibits imprisonment, in the absence of *mens rea*, of a defendant who was found *vicariously* liable for another's acts. *Commonwealth v. Robinson*, at 497 Pa. 49, 54, n. 3, 438 A.2d 964, 967 (1981) *and Commonwealth v. Field, supra* at 490 Pa. 524, 417 A.2d 160.

We hold therefore that in imposing sentences of 90 days or less for violations of section 3731 of the Motor Vehicle Code, the legislature did not exceed the latitude afforded the Commonwealth under the police powers nor did it violate any principles of due process. By enacting section 3731, the General Assembly has simply stated to the world that, while one may drive a motor vehicle on the highways and roads of Pennsylvania, and while one may drink alcoholic beverages to excess in Pennsylvania, one may not do both simultaneously.

For the foregoing reasons, the order of the Court of Common Pleas of Allegheny County granting appellee's motion to dismiss the information is reversed and the case is remanded.

ZAPPALA, J., joins in this opinion and filed a concurring opinion.

ROBERTS, C.J., and NIX and McDERMOTT, JJ., filed concurring opinions.

HUTCHINSON, J., filed a concurring and dissenting opinion.

FLAHERTY, J., filed a dissenting opinion.

ZAPPALA, Justice, concurring.

The majority writes at length regarding a point which is not in dispute: the statute in question has a rational relationship to a valid state objective. The requirements of due process have clearly been met to the extent that the legislature has acted in an area properly the subject of its police power, and has not done so arbitrarily. The question presented for our determination is whether the legislature has acted "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, ——, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). The statute clearly does not "encourage arbitrary and discriminatory enforcement." A person driving a vehicle either has blood alcohol greater than .10% or he does not. There is no room for discretionary determinations by enforcement officers whether the conduct violates the statute or not. If the statute is to be found impermissibly vague, then, it must be because it fails to define the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited."

Appellee's argument in support of such a finding differs from the ordinary "vagueness" argument in that it focuses only on the individual's "inability" to determine when his conduct constitutes a violation, without considering whether the language of the statute is the cause of that "inability." Careful analysis reveals that the Appellee's argument is not that the *statute* is vague, but that he as a person of ordinary intelligence cannot readily determine with certainty whether his conduct conforms to the requirements of the statute. This argument, I think, goes more to the reasonableness of the legislative judgment than to whether fair notice has been provided as required by due process. Clear-

ly, if the legislature were to define as illegal, conduct which was *impossible* to determine as being within the definition, then that definition would fail as being irrational. A mere showing of *difficulty* in determining whether conduct is within the definition does not suffice to meet the heavy burden of persuasion upon one who challenges the constitutionality of an Act of the General Assembly, or rebut the strong presumption of constitutionality which every statute carries.[1] *See Snider v. Thornburgh,* 496 Pa. 159, 166, 436 A.2d 593, 596 (1981). Thus although I do not adopt the Majority's reasoning, I fully concur in the determination that the statute does not violate due process for vagueness or any other reason.

The Appellee's alternative argument, not addressed by the lower court, that the statute violates due process because it imposes strict criminal liability, is properly treated by the Majority. Both this Court and the United States Supreme Court have recognized that "it is doubtless competent for the [government] to create strict criminal liabilities by defining criminal offenses without any element of scienter...." *Smith v. California,* 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959). In *Holdridge v. United States,* 282 F.2d 302, 310 (8th Cir.1960), Judge, now Justice Blackmun stated the situations in which strict liability may be imposed.

"... where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not one taken over from the common law, and where [legislative] purpose is supporting,

1. By way of analogy, I note that in the case of statutory rape, a person may be convicted upon a showing of intercourse with another under the age of 14. The fact that the victim is under 14 is extremely difficult to determine with certainty, but this court has held that exercising its police power, "the legislature rationally may require that one eighteen years of age or older who engages in sexual intercourse with a child below fourteen years of age does so at his own peril." *Commonwealth v. Robinson,* 497 Pa. 49, 54, 438 A.2d 964, 966 (1981).

the statute can be construed as one not requiring criminal intent."

For the foregoing reasons, I concur in the result reached by the Majority.

ROBERTS, Chief Justice, concurring.

I agree with the majority that the order of the Court of Common Pleas of Allegheny County declaring 75 Pa.C.S. § 3731(a)(4) unconstitutionally vague must be reversed, and the case remanded for trial. Section 3731(a)(4), which makes it unlawful for a person to operate a motor vehicle while "the amount of alcohol by weight in the blood of the person is 0.10% or greater," neither " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' " nor " 'is so indefinite that it encourages arbitrary and erratic arrests and convictions,' " *Commonwealth v. Burt*, 490 Pa. 173, 177–78, 415 A.2d 89, 91 (1980), quoting *Colautti v. Franklin*, 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979).*

With respect to the concern that the statute imposes criminal liability without fault, section 3731(a)(4) requires that a person's blood-alcohol level equal or exceed 0.10%, and thus sanctions only those who have chosen to drive after having knowingly consumed alcoholic beverages. Accordingly, section 3731(a)(4) does not violate due process for want of a scienter requirement, see *Commonwealth v. Field*, 490 Pa. 519, 417 A.2d 160 (1980), and the majority's discussion of whether absolute liability may constitutionally be imposed is inappropriate.

---

* It was erroneous for the trial court to have considered a facial challenge to 75 Pa.C.S. § 3731(a)(4). Because section 3731(a)(4) does not reach constitutionally protected conduct, appellee's vagueness claim is to be examined " 'in the light of the facts of the case at hand,' " *Commonwealth v. Burt*, supra, 490 Pa. at 178 n. 5, 415 A.2d at 92 n. 5, quoting *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975), facts which include, according to the Commonwealth, appellee's visible intoxication and 0.13% blood-alcohol level at the time of his arrest.

NIX, Justice, concurring.

Although I share some of the concerns ably expressed in Mr. Justice Flaherty's Dissenting Opinion, I am persuaded to join the mandate of the majority based upon the view that a finding of 0.10% necessarily requires the individual consuming such a quantity to be aware of some degree of impairment resulting from the alcoholic intake.

McDERMOTT, Justice, concurring.

There are none so brave, none surer of their faculties than one warmed with the fruits of forgotten summers. That they may imbibe more than the legal limit is a risk they take, if they drive. Every risk they forgo is one less for everybody. It is a quibble to suggest that one may not know his own limit, when as Mr. Justice Larsen notes, the State could prohibit an eyedrop. I agree with the majority that the imposition of absolute liability is permissible in the case at hand, *Cf. Commonwealth v. Field*, 490 Pa. 519, 417 A.2d 160 (1980) (upholding Section 3732 of the Vehicle Code against constitutional attack), and for that reason I join in the decision to reverse.

However, I believe that the majority's discussion regarding culpability in cases involving sentences of 90 days or more is somewhat premature and for that reason I write separately. Section 3731(e)(1)(iii) of the Vehicle Code, 75 Pa.C.S. § 3731(e)(1)(iii), provides that a person is subject to imprisonment for not less than ninety days if he has "twice previously been convicted of an offense under this section or of an equivalent offense in this or other jurisdictions within the previous seven years." There is nothing in this record to indicate that appellee here has been previously convicted of driving while intoxicated. Thus, he was not subject to the 90 days provisions of the statute.

I would go no further than to hold that the imposition of absolute liability in this case does not offend appellee's constitutional rights.

HUTCHINSON, Justice, concurring.

I agree with Mr. Justice Larsen that this statute is not void for vagueness under the due process clause of the Fourteenth Amendment to the United States Constitution or otherwise and to that extent join his opinion. I am, however, unable to accept either his or Chief Justice Roberts's resolution of the scienter problem. I believe the former will either prove unworkable, or emasculate the legislative intent to impose the sanction of a second degree misdemeanor on this offense by converting most prosecutions into summary offenses. The latter, in finding scienter in the act of driving after consuming alcoholic beverages sufficient to reach a .010% blood level, in reality eliminates the mental element of the crime by merging it into the act of alcoholic consumption. I believe the elimination of that mental element is unconstitutional for offenses graded as second degree misdemeanors.[1] I would, instead, look to the general culpability sections of our Crimes Code. Since this offense is part of the Motor Vehicle Code, not the Crimes Code, we look first to 18 Pa.C.S. § 305 to determine whether the general requirements of culpability provided in 18 Pa.C.S. § 302 apply. Section 305 provides:

(a) When culpability requirements are inapplicable to summary offenses and to offenses defined by other statutes.—The requirements of culpability prescribed by section 301 of this title (relating to requirement of voluntary act) and section 302 of this title (relating to general requirements of culpability) do not apply to:

(1) summary offenses, unless the requirement involved is included in the definition of the offense or the court determines that its application is consistent with effective enforcement of the law defining the offense; or

(2) offenses defined by statutes other than this title, in so far as a legislative purpose to impose absolute

1. 75 Pa.C.S. § 3731(a) offenses are graded as second degree misdemeanors. 75 Pa.C.S. § 3731(e).

liability for such offenses or with respect to any material element thereof plainly appears.

(b) Effect of absolute liability in reducing grade of offense to summary offense.—Notwithstanding any other provision of existing law and unless a subsequent statute otherwise provides:

(1) when absolute liability is imposed with respect to any material element of an offense defined by a statute other than this title and a conviction is based upon such liability, the offense constitutes a summary offense; and

(2) although absolute liability is imposed by law with respect to one or more of the material elements of an offense defined by a statute other than this title, the culpable commission of the offense may be charged and proved, in which event negligence with respect to such elements constitutes sufficient culpability and the classification of the offense and the sentence that may be imposed therefor upon conviction are determined by section 106 of this title (relating to classes of offenses) and Chapter 11 of this title (relating to authorized disposition of offenders).

As noted, the Legislature has graded violations of Section 3731 of the Motor Vehicle Code as misdemeanors of the second degree, not summary offenses. Therefore, the exception to the culpability requirements of 18 Pa.C.S. § 302 found in 18 Pa.C.S. § 305(a)(1) does not apply. Moreover, the court did not find a legislative intention to impose strict liability with respect to the second element of homicide by motor vehicle under Section 3732 of the Motor Vehicle Code, 18 Pa.C.S. § 3732,[2] even though the Legislature there used the word "unintentional" to qualify the first element of the

**2.** Section 3732 provided that:

Any person who *unintentionally* causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death. (Emphasis added).

offense. *See Commonwealth v. Field,* 490 Pa. 519, 417 A.2d 160 (1980); *Commonwealth v. Barone,* 276 Pa.Superior Ct. 282, 419 A.2d 457 (1980).[3] I do not therefore see how it can be found in Section 3731, the section under consideration here.[4] As the United States Supreme Court said in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the "mere omission from a criminal enactment of any mention of intent should not necessarily be construed as dispensing with it." Absent such "plain appearance" of a legislative purpose to impose absolute liability and reduce the grade of the offense to a summary under Section 305(b) of the Crimes Code the exception provided in Section 305(a)(2) of the Crimes Code does not apply. Instead, this case comes under the general culpability provisions of Section 302. Considering the scientific evidence set forth in Mr. Justice Larsen's opinion I have no difficulty in concluding that consumption of alcoholic beverages in quantities sufficient to produce a blood level of .010% is at least grossly negligent, *see* 18 Pa.C.S. § 302(b)(4), thus permit-

3. In *Commonwealth v. Barone, supra,* President Judge Cercone joined by Judge Cavanaugh adhered to the view that the Commonwealth must show culpable negligence with respect to the second element of homicide by motor vehicle as defined by 18 Pa.C.S. § 302(b)(4). In *Commonwealth v. Field, supra,* this Court inexplicably declined to refer to the Crimes Code in order to determine the scienter requirement for the second element of homicide by motor vehicle. Likewise, we did not find that the Legislature intended to impose strict liability for both elements of the offense. Instead, we applied a scienter requirement approximating ordinary negligence, *i.e.* "whether the [defendant] knew or should have known he engaged in the conduct claimed to be in violation of that section." If the court intended in *Field* to find an intent to impose absolute liability but save the statute by reference to the negligence standard in Section 305(b)(2) it failed to make that intention clear. Moreover, if such were our intent we seem to have used the incorrect standard of ordinary negligence rather than gross deviation from the standard of care, the more blameworthy culpability Section 302(b)(4) of the Crimes Code uses in defining culpable negligence.

4. Section 3731(a)(4) provides that:
   (a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:
   . . . .
   (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

ting the grading of this offense is a misdemeanor. *See Commonwealth v. Barone, supra* (opinion announcing the judgment of the court by Cercone, J.). Indeed, I believe those studies show the state of mind involved in such conduct rises to recklessness, imposing culpability under Section 106 definitions.[5]

FLAHERTY, Justice, dissenting.

While I am in complete accord with the majority in deploring the "wanton and senseless slaughter" of innocent people by drunk drivers, I must dissent to the majority's view that the statute at issue in this case, which makes it a crime to operate a motor vehicle while a person's blood alcohol content reaches or exceeds 0.10% by weight, 75 Pa.C.S.A. § 3731(a)(4), is constitutional. My view is that the statute is unconstitutionally vague.

The majority's test for constitutional vagueness is correctly stated:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner than does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson,* 461 U.S. 352, ——, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). Under this test, we must look to whether an ordinary person can understand what conduct is prohibited. The majority argues, in essence, that an ordinary person knows when he is getting drunk, and, therefore, the statute is not unconstitutionally vague. But getting drunk is not what is proscribed by the statute; nor does the statute make it a crime to drive after one has ingested alcohol. If it did, there would be no question as to

5. Unlike Judge Cercone we are not here required to use the 302(b)(4) gross deviation standard in order to distinguish the 75 Pa.C.S. § 3731 Vehicle Code offense from a related Crimes Code offense using recklessness or gross negligence. Cf. 75 Pa.C.S. § 3732 (Homicide by vehicle) and Crimes Code 18 Pa.C.S. § 2504 (Involuntary manslaughter).

vagueness. Rather, the statute proscribes the operation of a motor vehicle after a person has ingested a particular measure of alcohol, but there is no way for an ordinary person to know when he has reached that statutorily proscribed level.

I am in complete agreement with the majority and with the legislature that measures must be taken to prevent drunk drivers from killing innocent people on our highways. The immediacy of the goal, however, has never and cannot now serve to justify the enforcement of statutes which provide no meaningful notice as to what behavior has been proscribed. Had the legislature, on the other hand, seen fit to enact a statute, for example, prohibiting the operation of a motor vehicle within eight hours of the consumption of *any* alcoholic beverage, similar to the regulation of the Federal Aviation Administration, *see* Majority Opinion at n. 9, such a provision would pass constitutional challenge of the sort raised here, for there could be no mistake as to what was prohibited.

For these reasons, I would affirm the lower court and hold that the statute is unconstitutionally void for vagueness.