## Commonwealth v. Warren

*J. Curtis Joyner, Thomas Ramsay,* for the Commonwealth.
*Lee Ruslander,* for defendant.

GAWTHROP, *J.*, March 28, 1984—We have before us a document which is styled application to correct illegal sentence. On February 27, 1984, defendant pled guilty, by a plea bargain, to 75 Pa.C.S. §3731(a)(4), Driving Under the Influence. That section reads in full:

"(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the move-

ment of any vehicle while: (4) the amount of alcohol by weight in the blood of the person is 0.10 percent or greater."

The basis of defendant's application is that the sentence we imposed was unlawful, since, asserts defendant, the Supreme Court of Pennsylvania has "held" that subsection (4) of Driving Under the Influence is but a summary offense, with a maximum penalty of 90 days. After oral argument, and upon due deliberation, we deny the petition.

In Commonwealth v. Mikulan, 504 Pa. 244, 470 A. 2d 1339, (1983), the Supreme Court declined to find the so-called strict liability aspect of the new amendments to the DUI law unconstitutional. In so holding, a plurality of that court, specifically in the lead opinion, authored by Mr. Justice Larsen, reasoned that since a full-fledged misdemeanor which lacked a requirement of scienter or mens rea would have been unconstitutional, and since the legislature, of course, had no intent to violate the Constitution, obviously there was a legislative intent to make Subsection (4) but a summary offense; thus, by such judicial pruning, the essential constitutionality of the statute was saved. This conclusion is obviously most important, and the ramifications of such a judicial amendment to the statute are manifold. For example, if it is a summary offense, does a defendant's right to trial by jury fall by the wayside as well? Is jurisdiction to try these cases revived in the minor judiciary? Does such a summary conviction count as a prior conviction for purposes of augmentation or enhancement of sentence, upon defendant's surfacing with a second offense? In addition, is this bargained sentence of 48 hours to 23 months illegal, at bar, requiring abatement to a maximum of 90 days?

We believe that these questions need not be reached or may be answered in the negative, since we are constrained to construe the summary-offense reasoning, as it were, of Mikulan, as not being dispositive, being but the position embraced by a plurality of that court, and a plurality of two, at that. It is fundamental that a plurality of the members of the Supreme Court does not modify pre-existing law, and we believe that principle to apply not only to prior majority decisions of the Supreme Court, but to amendatory constructions of acts of our general assembly. Our Supreme Court has repeatedly recognized that when an opinion of our Supreme Court is not a majority opinion, when the basis of the court's decision does not represent the views of at least four members of that court, it is nondecisional. See, e. g., Mt. Lebanon v. County Bd. of Elections of Allegheny County, 470 Pa. 317, 368 A.2d 648, 650 (1977). See also Greiner v. Volkswagenwerk Aktiengeselleschaft, 540 F. 2d 85, 91 (1976). Votes of justices concurring only in the result of a case represent agreement with the mandate only. Commonwealth v. Glover, 497 Pa. 433, 441 A.2d, 1216, 1217 (1982).

Under this teaching, the Supreme Court's purported holding[1] of Mr. Justice Larsen's opinion must be scrutinized with care. This task we now undertake.

Although Mr. Justice McDermott at first appears to join in the opinion of Mr. Justice Larsen, he expressly observes: "that the majority's discussion re-

---

1. We *hold* therefore . . . that in imposing sentences of 90 days or less for violations of section 3731 of the MVC, the legislature did not exceed the latitude afforded the Commonwealth under the police powers, nor did it violate any principles of due process." (Emphasis supplied.) 470 A.2d at 1348.

garding culpability is somewhat premature and for that reason" . . . writes "separately."[2] In so doing, he eschews a joinder in the summary offense discussion, embracing the resultant finding of constitutionality only.

Justice Zappala joins in the reasoning of the lead opinion, stating that it "is properly treated by the Majority." Although we certainly count his vote as endorsing the reasoning of Mr. Justice Larsen on the issue before us, we respectfully observe that his reference to the treatment "by the Majority" does not a majority make.

Chief Justice Roberts also alludes to the "Majority's[3] discussion of whether absolute liability may

---

2. He goes on to construe §3731(e)(i)(iii) of the Vehicle Code, 75 P.S. §3731(e)(i)(iii), as proclaiming that "a person cannot be subject to imprisonment for more than 90 days unless he has at least twice previously been convicted of an offense . . . ." We respectfully observe that the 90-day provision refers to but the *minimum* sentence, since the statute states: "Any person violating . . . this section is guilty of a misdemeanor of the second degree and the sentencing court shall order the person to pay a fine of not less than $300.00 and serve a *minimum* term of imprisonment: . . . (iii) *not less than* 90 days if the person has twice previously been convicted of an offense under this section . . . ." (Emphasis supplied). Although we, again respectfully, cannot agree that Mr. Justice McDermott's reluctance to reach the 90-day statutory provision, upon the basis that, in his view, it was not fairly raised with respect to the seemingly non-recidivistic defendant Mikulan, we note that he expressly does not join in the reasoning of the lead opinion, stating that he "would go no further than to hold that the imposition of absolute liability in this case does not offend appellee's constitutional rights."

3. Chief Justice Roberts himself has been careful to issue a caveat to precedent seekers in this nose-counting context:

Votes of the justices . . . (in deciding a case) . . . typically take one of these forms: a joinder in the proposed opinion that is, in both the judgment and the reasoning; a concurrence in

constitutionally be imposed," finding the treatment of that issue unnecessary, since the statute, in his view, does not violate due process for want of scienter requirement and hence he deems that strict liability discussion to be "inappropriate." We read that observation as not standing for his joinder in a discussion which he has expressly labeled as "inappropriate."

Justice (now Chief Justice) Nix, despite some expressed affinity for the dissent, joins in the "mandate of the majority" on the basis that a 0.10 percent

---

the judgment only but not the reasoning; a dissent; or a concurrence in part and dissent in part.

If a majority of the participating judges join both the judgment and the reasoning of the proposed opinion, the opinion becomes an "Opinion of the Court." That opinion both announces the judgment of the court and becomes precedential and binding authority. If a majority of the justices limit their joinders to the judgment and do not join the reasoning, the opinion constitutes only an opinion announcing the judgment of the court. In either event, when the case is published in the official reports, the opinion of the original writer appears as the first opinion because it announces the judgment of the court, regardless of whether a majority agrees with its reasoning.

Unfortunately, it is too commonly assumed that the first opinion published in a case (the lead opinion) is a "majority opinion" constituting an "opinion of the court." As every first-year law student knows, effective and responsible criticism of any judicial decision requires knowledge of exactly what the case holds. Yet too many members of the profession and the public rely on headnotes, the caption of an opinion, or a published commentary — which themselves may be erroneous — instead of examining the opinions and counting votes. While a plurality opinion may be cited as "persuasive" authority, it is misleading to rely upon such an opinion without acknowledging that it represents view of less than a majority of the court.

If the court is evenly divided as to whether an order, judgment or decree being reviewed should be affirmed or reversed, as may occur when fewer than all seven justices participate in the decision of a case, the determination below is affirmed. In

imbiber would be "necessarily . . . aware of some degree of impairment from the alcoholic intake". We do not read this as embracing the lead opinion's treatment of the summary offense question. Compare: Commonwealth v. Glover, supra.

Justice Hutchinson filed a concurring and dissenting opinion in which he embraces the result of the subject statute's passing constitutional muster. He expressly dissents, however, from Mr. Justice Larsen's and the Chief Justice's resolution of the scienter problem. He believes that the former resolution "will either prove unworkable, or emasculate the legislative intent to impose the sanction of a second-degree misdemeanor on this offense by converting most prosecutions into summary offenses", and he deems the latter treatment, by eliminating the mental element of the crime, to be unconstitutional. Concluding that one must be at least grossly

such a case, neither the opinions in support of affirmance nor the opinions in support of reversal carry precedential weight, for neither side commands a majority.

. . . Vote-counting is important not only when the court divides evenly as to the appropriate judgment, but also when a majority agrees on the judgment but disagrees as to the reasons for that result. Whenever members of the court either concur in the result or file a concurring opinion, the reader is alerted to count the justices who join in each opinion. If a justice concurs only in the result, he joins only in the court's judgment. If a justice writes a concurring opinion, that opinion must be read to see whether the writer joins only in the judgment of the court (for the reasons he expresses) or whether the writer also joins another opinion written in the case. the writer also joins another opinion written in the case.

. . . Although cases where a single concurring opinion expresses a majority view are rare, cases where no opinion commands a majority are common and should never be mistaken as precedential. (Footnotes omitted).

Roberts, The Supreme Court of Pennsylvania: Constitutional Government in Action, 53 Pa. B.A.Q. 201, 204-5 (October, 1982); 54 Temple L.Q. 403 (1981).

negligent to imbibe to a blood alcohol level of 0.10 percent, he deems the proscribed act's grading as a misdemeanor to be permissible.

Finally, Justice Flaherty dissents, essentially on the void-for-vagueness issue, which is not the constitutional question today before us.

According to this head count, we thus conclude that the determination that the statute in question, 75 Pa. C.S. § 3731(a)(4), is but a summary offense is a view embraced by but two members of a court of seven, and that hence, this determination is not decisional. Accordingly, our sentence was not illegal.

The Supreme Court itself has had occasion to observe that " . . . it is too often forgotten that under our basic form and system of Constitutional Government the power and duty of a Supreme Court is interpretive, not legislative. We are not a Supreme, or even a Superior, Legislature, and we have no power to redraw the Constitution or to rewrite legislative acts or charters, desirable as that sometimes would be." Cali v. Philadelphia, 406 Pa. 290, 312, 177 A.2d 824, 835 (1962). That being so, we respectfully conclude that a fortiori, two members of that court lack the power to redraw or rewrite legislative acts, and that the unworkability or emasculation feared by Mr. Justice Hutchinson as resulting from such a revision simply has not come to pass.

In so holding, we recognize as well that the sentence in this case was achieved under the auspices of a plea bargain, a bargain fully consented to by defendant. The Superior Court has held that irregularities in a sentencing colloquy are waived when the obvious purpose of the plea bargain is to give a better benefit to defendant than he would have otherwise achieved. Commonwealth v. Weiss, 289 Pa. Super. 1, 432 A.2d 1020 (1981). He may not later

complain of certain consequences of his otherwise obviously eleemosynary bargain. This court takes the general position that certain courtesies which we have been extending to defendants who plead guilty under a bargain, courtesies such as the rather automatic self-executing parole after 48 hours, and such as a defendant's privilege to select the particular 48 hours in which he is to serve, will not be extended except when the Commonwealth acquiesces therein by a plea bargain, as was done at bar. In other words, it is forseeable if not probable that the usual section 3731 convict would almost certainly be spending a fair amount of time beyond the 48-hour minimum for a first offense, for example. In short, because the rule returnable, notice of hearing, and other formal procedural trappings of the regular parole process do, of necessity, take a fair amount of time, time which would be spent incarcerated, this defendant did indeed get himself a bargain. Thus, the holding of Commonwealth v. Weiss, supra, we believe to constitute a second basis for our denying a petition to shorten this bargained-for sentence.

Nevertheless, because of our recognition that an illegal sentence can never be waived, Commonwealth v. Walker, 468 Pa. 323, 330, 362 A. 2d 227, 230 (1976), Commonwealth v. Kerr, 298 Pa. Super. 57, 444 A. 2d 758, 759 (1982), we have deemed it necessary to treat the issue of whether this conviction constitutes but a summary offense. For the foregoing reasons, we enter the following

## ORDER

Defendant's application to correct illegal sentence shall be and hereby is denied, and the rule thereon is discharged.