J-A29006-23

2024 PA Super 31

IN RE: S.O.                          :    IN THE SUPERIOR COURT OF
                                     :          PENNSYLVANIA
                                     :
APPEAL OF: S.O.                      :
                                     :
                                     :
                                     :
                                     :
                                     :
                                     :    No. 398 WDA 2023

Appeal from the Order Entered March 6, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CC: 86 of 2023

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY BOWES, J.:                          **FILED: February 22, 2024**

S.O. appeals from the March 6, 2023, order involuntarily committing him to inpatient mental health treatment pursuant to 50 P.S. § 7303 ("§ 303") of the Mental Health Procedures Act ("MHPA").  We affirm.

By way of background, on February 27, 2023, the Allegheny County Department of Human Services, Offices of Behavioral Health ("DHS") filed the underlying petition seeking Appellant's extended treatment.  At the time it was filed, Appellant was already subject to an involuntary commitment at St. Clair Hospital in Pittsburgh pursuant to 50 P.S. § 7302 ("§ 302").[1]  The matter proceeded to a recorded video hearing before a mental health review officer, who dismissed the petition after concluding that DHS had not met its burden of establishing Appellant's "dangerousness."  N.T. Hearing, 3/3/23, at 31.

---

[1] The details relating to Appellant's § 302 commitment are not contained within the certified record.

Upon the application of DHS, the Allegheny County Court of Common Pleas, Orphans' Court Division held a *de novo* review hearing. The court reviewed a recording of the March 3, 2023 video hearing, and neither Appellant nor DHS offered any additional testimony or evidence. The court summarized the facts of the hearing as follows:

> [C.O.], who is [Appellant's] cousin, testified that [Appellant] called him on February 27, 2023. [Appellant] sounded stressed and was talking about his stepbrother [ N.A.] [Appellant] stated that [N.A.] was threatening them and the family and [Appellant] wanted to get rid of him for their honor. [Appellant] said this was hurting everyone and torturing him and causing him a lot of pain and he couldn't take it anymore. [Appellant] talked about "ordering a gun online and taking care of this person and talked about ordering five or six boxes of ammunition."

> [Appellant's] father, [M.O.], testified that during the [thirty] days preceding the February 27th petition, [Appellant] was screaming at voices and telling them to ["]shut the F up.["] On February 27th, [Appellant] was yelling at his father, in his face, talking about buying a gun, saying that the voices were never going to end[,] and medicine is not going to work[,] and they sold him to be tortured. [Appellant] got an inch away from his father's face and his eyes were blazing and his hands balled into fists. During this confrontation [Appellant's father] was afraid of [Appellant,] since his son is physically stronger. [Appellant] drinks alcohol excessively and used medical marijuana.

> Dr. Kenneth Vonderporten, M.D., [who observed Appellant at St. Clair Hospital,] testified that [Appellant] has been diagnosed with chronic paranoid schizophrenia, which is a severe, chronic mental illness. Dr. Vonderporten considers [Appellant] to be severely mentally disabled. He recommended inpatient treatment as the least restrictive option.

Orphans' Court Opinion, 8/1/23, at 3-4 (cleaned up).

The orphans' court found credible the testimony of Dr. Vonderporten, as well as Appellant's cousin and father. Following argument from DHS and

Appellant wherein they discussed the applicability of our High Court's decision in *In re B.W.*, 250 A.3d 1163 (Pa. 2021),[2] the court entered an order reversing the decision of the mental health review officer and directing that Appellant be involuntarily committed for a maximum of twenty days. This timely appeal followed. The orphans' court granted Appellant leave to file a statement of errors *nunc pro tunc*, which he did. Thereafter, the court entered a Rule 1925(a) opinion.

Appellant presents the following issue for review: "Whether the evidence was sufficient to involuntarily civilly commit [Appellant] pursuant to [§ 303], where there was not clear and convincing evidence that he was 'severely mentally disabled?'" Appellant's brief at 4.

We begin with a review of the pertinent law. In reviewing a court order for involuntary commitment, "we must determine whether there is evidence in the record to justify the court's findings. Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." *In re S.M.*, 176 A.3d 927, 935 (Pa.Super. 2017) (cleaned up).

Regarding involuntary treatment of individuals, the MHPA provides in pertinent part:

---

[2] As will be discussed in greater detail in the body of this opinion, the Supreme Court held in that case that "the articulation of a specific plan to harm an identified target that is deemed credible by medical professionals is sufficient to prove an act in furtherance of the threat to commit harm." *In re B.W.*, 250 A.3d 1163, 1175 (Pa. 2021).

Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in subsection (b)[.]

50 P.S. § 7301(a).

A clear and present danger to others "shall be shown by establishing that within the past [thirty] days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated." 50 P.S. § 7301(b)(1). However, satisfaction of this burden can also be made through "proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm." *Id*. Our High Court has stated that "when involuntary commitment under the MHPA is based on the 'threat and act' formulation, both threat and act in furtherance must be proven." *B.W.*, *supra* at 1173.

Finally, we note that the underlying petition sought extended mental health treatment pursuant to § 303 of the MHPA. Relevant hereto, that provision provides that "[a]pplication for extended involuntary emergency treatment may be made for any person who is being treated pursuant to [§] 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours." 50 P.S. § 7303(a). In order to support such a commitment, DHS must present clear and convincing evidence of the need. *See In re Vencil*, 152 A.3d 235, 242 (Pa. 2017)

- 4 -

(citations omitted). We have observed that "involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." *In re A.J.N.*, 144 A.3d 130, 137 (Pa.Super. 2016) (citation omitted).

With this background in mind, we now turn to the sole issue on appeal, beginning with a review of the court's rationale for ordering Appellant's involuntary commitment. In its Rule 1925(a) opinion, the orphans' court concluded that DHS sufficiently proved that Appellant presented a clear and present danger to others, specifically finding that this matter was controlled by our High Court's decision in *B.W. See* Orphans' Court Opinion, 8/1/23, at 6. In that case, B.W. conveyed to his physician "a developed, specific plan to kill his coworker, whom he identified, by strangling him the next time he saw him." *B.W.*, *supra* at 1176. The physician determined that the threat was credible and submitted an application for involuntary emergency examination, which ultimately led to B.W.'s § 302 commitment and treatment. *Id*. at 1168. B.W. filed a petition to expunge, arguing that there was no basis for his commitment based on his remark, which was merely "blowing off steam." *Id*. The trial court denied the petition, and B.W. appealed.

This Court reversed, finding that the involuntary commitment petition did not aver facts sufficient to prove that B.W. took an "act in furtherance" of his threat to kill his coworker. Our High Court granted discretionary review and reversed our decision. Particularly, it concluded that "the articulation of a specific plan to harm an identified target that is deemed credible by medical

professionals is sufficient to prove an act in furtherance of the threat to commit harm." *Id*. at 1175. In its analysis, the Supreme Court found B.W.'s threat to be "fully-formed[,] as it detailed the named target of the threat, the method of carrying out the threat of harm, and the imminence of the threat." *Id*. at 1176. The Court also considered it significant that physicians who treated B.W. found his threats to be credible. *Id*.

Here, relying on the *B.W.* decision, the orphans' court reasoned as follows:

> In the instant case, [Appellant] told his cousin about his plan to order a gun online and five or six boxes of ammunition to take care of [his stepbrother]. This was as detailed a plan as B.W. telling his physician he would strangle his coworker next time he saw him. [Appellant] told his cousin about a specific plan with an identified target and this was sufficient to prove an act in furtherance of the threat to commit harm.
>
> Additionally, [Appellant] acted in a threatening manner towards his father, talked about buying a gun, and was hearing voices that he could not control. Dr. Vonderporten considered [Appellant] to be severely mentally disabled and recommended continued inpatient treatment.

Orphans' Court Opinion, 8/1/23, at 6. Hence, the court found that DHS met its burden of proving that Appellant was a clear and present danger to others and subject to extended involuntary emergency treatment.

On appeal, Appellant argues that DHS did not prove an act in furtherance of his threat, and accordingly has failed to meet its burden of showing Appellant's clear and present danger of harm to others. He highlights that there was no evidence that Appellant took any overt actions to follow up

on his threat, such as buying a gun or attempting to buy a gun, whether in store or via the Internet.  *See* Appellant's brief at 21-22.  Further, Appellant contends that this case is distinguishable from *B.W.* for two reasons.  First, in the matter *sub judice*, the threatening statement in question was communicated to a layperson who deemed it credible, not a treating physician.  *Id*. at 20.  Second, "unlike in *B.W.*, there was no evidence suggesting, let alone establishing, an 'imminence of the threat.'"  *Id*.

Upon review, we find ample evidence supporting the orphans' court's order for involuntary mental health treatment, particularly pursuant to the "threat and act" formulation of the MHPA.  As the court cogently articulated, the threat made by Appellant was materially similar to that made by B.W.[3] Appellant stated that he wanted to purchase a gun online, along with five or six boxes of ammunition, and shoot his stepbrother, thereby killing him in the family's honor.  This threat was specific as to method and execution, was directed to a particular and real target, and was determined to be credible.  As such, we conclude that this satisfied the MHPA's requirement of proving an

---

[3] We note that unlike here, *B.W.* was decided in the context of an appeal from the denial of a petition to expunge a mental health commitment pursuant to § 302.  However, we determine that the High Court's rationale therein is equally applicable to appeals arising from involuntary extended treatment pursuant to § 303, since such a commitment requires that a person already be subject to treatment under § 302, which in turn necessitates a finding that the person be a clear and present danger to himself or others.  *See J.A. v. Montgomery County*, 297 A.3d 715, 2023 WL 2887355, *5 (Pa.Super. 2023) (non-precedential decision) (discussing *B.W.* and applying its holding regarding the "acts in furtherance" prong in a direct appeal from a § 303 commitment).

act in furtherance of the threat. *See B.W.*, *supra* at 1175 (stating that "articulation of a specific plan to harm an identified target that is deemed credible by medical professionals is sufficient to prove an act in furtherance of the threat to commit harm"). The fact that Appellant did not purchase or attempt to purchase a firearm is inconsequential.

We are cognizant that there is a factual distinction between this case and *B.W.*, as Appellant correctly highlights. Here, the remark made by Appellant was relayed to a family member and layperson, who found the threat credible enough to co-petition for Appellant's commitment. The statement was not uttered in the presence of the medical professional that ultimately recommended inpatient treatment. Nonetheless, we believe that this is an immaterial distinction. While Appellant's threat was not made directly to his physician, it was nevertheless conveyed to Dr. Vonderporten, who ultimately found it credible. *See* N.T. Hearing, 3/3/23, at 19 (when asked about his concerns in the event of Appellant's discharge, the doctor stated: "Well, certainly concerns of the homicidal threats and notifying the persons he's directing these threats towards."). This shows that Appellant's physician did, in fact, find the remarks to be worrisome enough to factor into his decision to recommend extended commitment and treatment for up to twenty days.

Further, we reject Appellant's attempt to distinguish this case from *B.W.* based on his argument that DHS did not establish the imminence of Appellant's threat. *See* Appellant's brief at 20. Appellant appears to rely on our High Court's passing reference to the word "imminence" when it discussed

whether B.W. fully developed his threat. ***See B.W.***, ***supra*** at 1176 (stating that B.W.'s plan to kill his coworker "was fully-formed as it detailed the named target of the threat, the method of carrying out the threat of harm, and the imminence of the threat").

However, while the Court identified "imminence" as a component of a plan being "fully-formed," it did not significantly discuss this factor or promulgate any test to be met for this criterion. ***Id***. In light of this, and based on the plain language of the MHPA, we find that our Supreme Court's use of the word "imminence" in that opinion referred to a showing that the threat was deemed **credible and serious**, thus warranting immediate treatment. This interpretation is supported by the fact that, although B.W. stated he would kill his co-worker the next time he saw him, there was no indication as to where or when that would be. ***Id***. at 1168 (recounting the physician's notes, which indicated, "Patient states that he was not sure when or where he would perform this act, but he would do it next time he saw the person"). As such, there was factually no indication in ***B.W.*** that any attack would occur within a specific time or was "imminent" in the sense Appellant uses the word.

Our interpretation is also consistent with the MHPA, which iterates that a person can only be subject to emergency examination and treatment when he is severely mentally disabled "and in need of immediate treatment[.]" 50 P.S. § 7301. Any "imminence" required to prove a clear and present danger to others pursuant to § 7301 arises from the fact that the threat and act in

furtherance of the threat must have been made within the thirty days leading to the filing of a petition. 50 P.S. § 7301(b)(1). There is nothing in the act stating that the threat must have expressed that an underlying harmful act will promptly occur or denote a specific timeframe for the act to be carried out.

Rather, commitment pursuant to the MHPA may be proper when there is a determination that the individual is "in need of immediate treatment" based on a threat and act in furtherance of the threat. As discussed above, Appellant's statement was deemed credible by his cousin and further was a consideration in Dr. Vonderporten's conclusion that Appellant's immediate and extended § 303 treatment was necessary. Appellant's threat was also accompanied by remarks to his father that the voices in his head "were never going to end" and that medication was "not going to work." As the orphans' court recognized, Appellant's physician considered these statements when determining that Appellant was severely mentally disabled and in need of immediate inpatient treatment. *See* Orphans' Court Opinion, 8/1/23, at 6. Accordingly, there was sufficient evidence in the record to justify the court's finding that Appellant should be involuntarily committed, despite Appellant's threat being silent as to exactly when he was going to shoot his stepbrother. Appellant is therefore not entitled to relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 02/22/2024