J-S18028-24

2024 PA Super 212

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EMILY FRANCESCA MCCORMICK | : | |
| | : | |
| Appellant | : | No. 1116 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 31, 2023
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0000867-2022

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY McLAUGHLIN, J.: **FILED: September 17, 2024**

Emily Francesca McCormick appeals from the judgment of sentence entered following her conviction for driving under influence of alcohol or controlled substance – metabolite of a substance.[1] She challenges the constitutionality of 75 Pa.C.S.A. § 3802(d)(1)(iii). We affirm.

The parties stipulated to the following facts:

> On December 12, 2021, at approximately 10:00 p.m., Trooper Christopher Fox was in a marked patrol vehicle conducting radar speed enforcement. He was stationary on Interstate 70 near mile marker 22 in South Strabane Township, Washington Couty, Pennsylvania. At that time, Trooper Fox observed a white Buick SUV traveling east at 81 miles per hour in a posted 55 miles per hour zone. Trooper Fox pursued the vehicle for the speeding violation. . . .
>
> Trooper Fox pulled the car over near mile marker 24. The vehicle had two occupants. The driver was Emily McCormick,

---

[1] 75 Pa.C.S.A. § 3802(d)(1)(iii).

the Defendant in this action, identified by her driver's license. The front seat passenger was Nathan Stanley. Mr. Stanley was not charged in this incident.

While speaking to McCormick, Trooper Fox observed green leafy material on the lap of the front seat passenger and smelled the odor of burnt marijuana. When asked, McCormick related that Stanley did smoke a "joint" in the vehicle earlier.[] While speaking to McCormick, Trooper Fox noted her to have bloodshot, glassy eyes, and dilated pupils. Trooper Fox asked McCormick to exit the vehicle. McCormick displayed signs of impairment after exiting the car: she was slow and sluggish, staggered, and swayed. Trooper Fox administered the one leg stand, walk and turn, and modified Romberg balance field sobriety tests. During the walk and turn, McCormick started too soon during the instructional phase and was unable to maintain her balance. She took the wrong number of steps and missed the heel-to-toe, she raised her arms and stepped off the line. During the one leg stand, which she attempted with both feet, she put her foot down, swayed, and used her arms for balance. She also forgot to count and had to be reminded. During the modified Romberg, the Trooper noted eyelid tremors, and McCormick estimated 18 seconds to be 30. For these reasons, Trooper Fox reached the conclusion that McCormick was impaired and then arrested her for Driving Under the Influence of a Controlled Substance.

At approximately 10:30 p.m., Trooper Fox read McCormick the DL-26 form for blood testing. McCormick consented to blood testing. Trooper Fox transported McCormick to Washington Hospital for a legal blood draw. He witnessed blood drawn from McCormick's right arm by hospital employee Michele Anderson. Trooper Fox took custody of the Blood Sample and logged it into evidence. The blood was sent to NMS labs for testing.

NMS labs issued a report to Trooper Fox dated January 20, 2022. **McCormick's blood tested positive only for Benzoylecgonine at 92 ng/ml. Benzoylecgonine is an inactive metabolite and chemical breakdown product of cocaine.** The minimum quantitation limit for benzoylecgonine is 0.5 ng/mL.

Stipulation of Facts, filed 6/26/23, at 1-2 (unpaginated and footnote omitted) (emphasis added). Following a non-jury trial, the court found McCormick guilty of violating Section 3802(d)(1)(iii). It sentenced McCormick to six months of reporting probation. This timely appeal followed.

McCormick raises one issue: "Is Title 75 Pa. Stat. and Cons. Stat. Ann. § 3802(d)(1)(iii) unconstitutional as written and applied, considering that an ordinary person would not understand what it means to have a metabolite of a substance in their system?" McCormick's Br. at 5.

McCormick raises a constitutional challenge. Our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Kakhankham**, 132 A.3d 986, 990 (Pa.Super. 2015). A statute is presumptively constitutional "and [it] will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights." **Id.** (quoting **Commonwealth v. Ludwig**, 874 A.2d 623, 628 (Pa. 2005)) (cleaned up). The presumption of constitutionality is strong, and the challenger bears a heavy burden to prove otherwise. **Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth**, 877 A.2d 383, 393 (Pa. 2005). We may accordingly strike down a statute as unconstitutional only if the challenger carries the burden of proving that it "clearly, palpably, and plainly" violates the federal or state constitution. **Commonwealth v. McCoy**, 895 A.2d 18, 29-30 (Pa.Super. 2006) (citation omitted).

McCormick claims that Section 3802(d)(1)(iii) "should be declared void for vagueness because ordinary people should not be expected to understand what it means to have a metabolite of a substance in their system" and how long it may remain there. *See* McCormick's Br. at 10. Her claim lacks merit.

To determine whether a statute is void for vagueness, the question is whether the statute "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application[.]" *Commonwealth v. Herman*, 161 A.3d 194, 204 (Pa. 2017) (citation omitted).

Section 3802(d)(1)(iii) prohibits a person from driving, operating, or being in physical control of a vehicle if "[t]here is in the individual's blood any amount of a . . . metabolite" of a controlled substance. 75 Pa.C.S.A. § 3802(d)(1)(iii). Cocaine is a controlled substance. *See* 35 P.S. § 780-104(2)(i)(4).

Although we have not found case law from this Commonwealth on this precise issue, we have guidance from *Commonwealth v. Thur*, 906 A.2d 552, 561-63 (Pa.Super. 2006). There, the appellant claimed that 75 Pa.C.S.A. § 3802(c) (DUI – highest rate of alcohol) was void for vagueness because there was no way for a person to predict whether their blood alcohol content ("BAC") level would reach 0.16% or more within two hours of driving. *Thur*, 906 A.2d at 561.

The *Thur* Court reviewed at length the Pennsylvania Supreme Court's decision in *Commonwealth v. Mikulan*, 470 A.2d 1339 (Pa. 1983)

(plurality). The defendant in *Mikulan* challenged a statute prohibiting driving with a BAC of .10% or greater. *Thur*, 906 A.2d at 561. The defendant contended that persons drinking alcohol therefore had to predict if their BAC would exceed the permitted limit while they were driving. *Id.* The defendant in *Mikulan* maintained that there was no reasonable way to do so, such that drivers had to guess whether their conduct would be criminal. *Id.*

A plurality of the Supreme Court rejected the defendant's argument. It stressed that the federal and state constitutions require statutes to provide "fair warning, not mathematical precision," of what was illegal. *Id.* The Supreme Court in *Mikulan* conceded that the statutory scheme required drivers to estimate when their BAC would pass the legal limit, but disagreed that that rendered the statute unconstitutionally vague. *Id.* The Court declined to "strike down the statute merely because the driver had to estimate and could not 'pinpoint that last drop of alcohol' that would take him into the proscribed range." *Id.* at 562 (quoting *Mikulan*, 470 A.2d at 1343). Acknowledging the possibility of an erroneous judgment of whether one's BAC might exceed legal limits while driving, the *Mikulan* Court determined that the General Assembly permissibly allocated that risk to persons drinking alcohol and then driving. The Court emphasized "the compelling interest in protecting the citizenry against drunk driving." *Id.*

This Court in *Thur* "distill[ed]" from *Mikulan* a rule that "[i]t is constitutionally permissible to require drivers to predict their BACs at some reasonable future time after drinking." *Id.* Applying that rule to the case

before it, this Court determined that Section 3802(c) was not void for vagueness. The **Thur** Court explained that "it is no more difficult for drivers to predict their BACs within two hours after driving than it was to predict them at the time of driving." **Id.**

A different vagueness challenge to the provision we presently consider – Section 3802(d)(1)(iii) – was at issue in **Commonwealth v. Bell**, No. 1054 MDA 2019, 2020 WL 1159323 (Pa.Super. filed March 10, 2020) (unpublished mem.). The decision there nonetheless also provides guidance. In that case, the defendant pointed out that Section 3802(d) criminalized driving with not only "active" metabolites, but also "inactive" metabolites in the system. **Id.** at *5. The defendant contended that because a driver would not know of the presence of inactive metabolites in the blood, the statute failed to give warning of the conduct it proscribed. **Id.** at *6. This Court disagreed. We explained that the subsection at issue did not require proof that the driver could not drive safely. Instead, it criminalized driving with "any amount" of a metabolite of a scheduled substance in the blood. **Id.** at *7. Because the law only required "that metabolite of the Schedule I or II drug" be present, we found that drivers were on sufficient notice of the criminalized conduct. **Id.**

Particularly persuasive is the decision of the Ohio Court of Appeals in **State v. Whalen**, 991 N.E.2d 738, 742-43 (Ohio Ct. App. 2013). There, the subsection of the statute at issue prohibited operating a vehicle if the driver had "a concentration of marihuana metabolite" in the urine, whole blood, blood

- 6 -

serum, or plasma greater than specified levels.[2] Ohio Rev. Code §
4511.19(A)(1)(j)(viii)(II). The defendant contended that the subsection was
void for vagueness because it did not give an ordinary person notice of the
outlawed conduct. *Id.* at 742. The Ohio court rejected that argument out of
hand. It noted that the statute forbids driving with "explicitly-defined levels of
a marihuana metabolite," and that a "metabolite" "is commonly defined as a
'substance produced by metabolism.'" *Id.* (quoting Am. Heritage Dictionary
1103 (4th Ed. 2000). The court summarily declared that "[a] person of
ordinary intelligence is certainly capable of understanding the meaning of a
marihuana metabolite and that driving with the proscribed levels of such a
metabolite in one's system is prohibited." *Id.* at 742-43.

*Whalen* also rejected the notion that the statute was "vague because
an ordinary person is not able to reasonably discern how long traces of
marihuana . . . may remain in one's system." *Id.* at 743. The court pointed
out that it was "unlawful to use or possess marihuana in any amount in Ohio."

---

[2] The subsection of the statute at issue in *Whalen* provided:

> No person shall operate any vehicle, streetcar, or trackless trolley
> within this state, if, at the time of the operation, any of the
> following apply: . . . The person has a concentration of marihuana
> metabolite in the person's urine of at least thirty-five nanograms
> of marihuana metabolite per milliliter of the person's urine or has
> a concentration of marihuana metabolite in the person's whole
> blood or blood serum or plasma of at least fifty nanograms of
> marihuana metabolite per milliliter of the person's whole blood or
> blood serum or plasma.

Ohio Rev. Code § 4511.19(A)(1)(j)(viii)(II).

*Id.* It considered that anyone using marijuana was "on fair notice that metabolites may remain in his system." *Id.*

We likewise reject the vagueness challenge here. A person of common intelligence can ascertain the scope of the prohibited conduct. The word "metabolite" is not vague. Merriam Webster defines it as "a product of metabolism" or "a substance essential to the metabolism of a particular organism or to a particular metabolic process." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/metabolite (last visited August 21, 2024); *see Commonwealth v. Gamby*, 283 A.3d 298, 307 (Pa. 2022) ("[t]o discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions"). A person of ordinary intelligence can readily understand what the statute forbids.

We also disagree with McCormick's argument that the statute is insufficiently specific because a person might not be able to determine how long a metabolite of a controlled substance would remain in their system. Consistent with *Thur* and *Mikulan*, it does not offend the Constitution to require persons to estimate or predict whether they have a metabolite of a controlled substance in their blood. *See Thur*, 906 A.2d at 562-63. The statute is not unconstitutionally vague.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

_____

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/17/2024