J-S37044-24
J-S37045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEPHEN DEREZ YOUNG | : | |
| | : | |
| Appellant | : | No. 352 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 22, 2023
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003354-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEPHEN DEREZ YOUNG | : | |
| | : | |
| Appellant | : | No. 353 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 22, 2023
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000747-2021

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 24, 2025**

Stephen Derez Young ("Young") appeals from the combined judgment

of sentence following his guilty pleas to third-degree murder, aggravated

assault, and persons not to possess firearms in one case, and persons not to

possess firearms, possessing a firearm without a license, and DUI in another.[1] We affirm.[2]

Young pled guilty to the following facts regarding criminal case 747 of 2021. On August 11, 2020, Officer Rich McAllister ("Officer McAllister") was dispatched to the scene of a crash in East Fallowfield Township, Chester County. *See* N.T., 4/11/23, at 3. The 911 caller, who remained on the scene, reported the car had struck a telephone pole and the driver was on the ground outside of the car. *See id*. at 3-5.

Officer McAllister found Young, disoriented and with red, glassy eyes, lying outside of the car beside a partially-loaded .38 caliber revolver on which his DNA was later found. *See id*. at 4. Young claimed he had been chased by four people. He consented to a blood draw that disclosed his recent use of methamphetamine and amphetamine that rendered him incapable of safe driving. *See id*. Officer McAllister recovered marijuana, methamphetamine, and cocaine from Young's car and found two holes made by bullets fired from *inside* the car. *See id*. at 5-6. Young is a person not to possess a firearm as a result of prior convictions that include, *inter alia*, aggravated assault of a police officer. *See id*. at 6, 12-14.

---

[1] *See* 18 Pa.C.S.A. §§ 2502(c), 2702(a)(6), 6105, 6106; 75 Pa.C.S.A. § 3802(d).

[2] Young filed identical briefs in both cases, which we consolidate.

Young pled guilty to the following facts regarding criminal case 3354 of 2020. On August 27, 2020, City of Coatesville police officers found Warren Curtis ("Curtis"), a forty-year-old man lying on the sidewalk with multiple gunshot wounds. *See id*. at 7-8. Curtis died at the hospital of his wounds. *See* N.T., 4/11/23, at 8. Officers at the scene traced a blood trail from where Curtis lay to an intersection near the front porch of 22 North Seventh Avenue, Young's niece's house, where they found several nine-millimeter shell casings. *See id*. at 8-9. Street camera footage and witnesses established Young had fired four shots at Curtis, his niece's boyfriend. *See id*. at 9.

Later that morning, police were dispatched to Young's niece's house. Young ignored an officer's command to come off of the porch and then pointed a semi-automatic handgun at a police officer. The officer fled; Young entered the house. *See id*. at 10. After police surrounded the house, Young surrendered and the police recovered a nine-millimeter handgun inside. *See id*. at 10. Young admitted to the police he never received direct threats from Curtis or saw him with a gun but shot Curtis because he "had access to everywhere [Young] laid his head," and he believe Curtis was "in the game . . . [a]nd this was how it had to go." *See id*. at 11-14.

In September 2023, the Honorable Allison Bell Royer sentenced Young, who had a prior record score of "5," to a term of incarceration of twenty-to-forty years for third-degree murder, consecutive terms of thirty-nine months to ten years for aggravated assault, five to ten years for person not to possess

firearms, and concurrent terms of five to ten years for the second count of persons not to possess firearms, three-and-one-half to seven years for possessing firearms without a license, and one to five years for DUI. *See* N.T., 9/22/23, at 3, 52-55. Young filed a post-sentence motion, which the trial court denied. Young timely appealed and he and the trial court complied with Pa.R.A.P. 1925.

Young raises the following issues for our review:

> I. Whether the [trial] court abused its discretion by imposing an excessive sentence that failed to consider mitigating factors including [Young's] mental health?
>
> II. Whether the [trial] court's imposition of an aggravated sentence based upon possession and use of a firearm and based upon violation of 18 [Pa.C.S.A.] § 6105 violates [Young's] rights under the U.S. and Pennsylvania Constitutions?

Young's Brief at 5-6.

Young's first claim challenges the discretionary aspects of his sentence.

A discretionary aspects of sentence claim is not appealable as of right; the appellant must invoke this Court's jurisdiction by satisfying a four-part test. This Court must determine:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly presented at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's claim has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (internal citations and brackets omitted).

Young filed a timely notice of appeal and properly preserved his issue in his post-sentence motion and Rule 1925(b) statement. He included a Pa.R.A.P. 2119(f) statement in his brief. Thus, Young has met the technical requirements for seeking review of the discretionary aspects of his sentence, and we must determine whether Young raised a substantial question.

Whether a substantial question exists is examined on a case-by-case basis. *See Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018). A substantial question exists if "the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id*. (internal citation omitted). We examine an appellant's Pa.R.A.P. 2119(f) statement to determine whether a substantial question exists. *See Commonwealth v. Christman*, 225 A.3d 1104, 1107 (Pa. Super. 2019).

Young's Rule 2119(f) statement constitutes a bald assertion of sentencing error. Young asserts "[a] claim of excessiveness can raise a substantial question as to the appropriateness of a sentence under the Sentencing Code, even if the sentence is within statutory limits." *See* Young's Brief at 11-12. He also asserts "this Court has previously found that 'an excessive sentence claim-in conjunction with an assertion the court failed to

consider mitigating factors-raises a substantial question.'" **See** Young's Brief at 12, quoting **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014).

Young's 2119(f) statement points to no portion of the Sentencing Code or fundamental norm of sentencing the court allegedly violated. Further, Young merely recites the types of claims that **can** raise a substantial question, without making any specific assertion of how his particular claim **does** raise a substantial question. Young's recitation in his Rule 2119(f) statement of the types of claims that can constitute a substantial question is inadequate to demonstrate the existence of a substantial question here. **See Radecki**, 180 A.3d at 441 (citation and internal quotation marks omitted) (stating that "[a] Rule 2119 statement is inadequate when it contains incantations and pronouncements of conclusions of law"). Young accordingly may not have review of his discretionary sentencing claim.[3]

_____

[3] Even were we to ignore Young's dispositive failure to state a substantial question in his Rule 2119(f) statement, no relief would be due. In his argument section, Young asserts all of his crimes on both dockets arose as part of the same criminal episode, and the court could have imposed a lower sentence given his mitigation evidence. **See** Young's Brief at 14. Young's aggravated assault of a police officer after a car crash did not arise from the same incident as his murder of his niece's boyfriend **two weeks later**. Moreover, the court received and reviewed a pret-sentence investigation report and Young's pre-sentence memorandum, expressly stated its consideration of Young's mental health struggles, **see** N.T., 9/22/23, at 2-3, 49-50, and gave Young a lesser sentence in recognition of his guilty pleas, **see id**. at 55-56. Finally, Young's cumulative minimum sentence of approximately twenty-eight years was not excessive – it incorporated
*(Footnote Continued Next Page)*

Young's other claim asserts the unconstitutionality of his sentence for persons not to possess firearms. *See* Young's Brief at 14-20. He asserts, pursuant to *New York State Rifle and Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *Range v. Attorney General United States of America*, 69 F.4th 96 (3d Cir. 2023) (*en banc)*,[4] that a court can only conclude a person's conduct falls outside of the Second Amendment right to bear arms if the firearm regulation is consistent with this nation's historical tradition. *See* Young's Brief at 15. Young concludes by asserting:

> the similarities between the federal felon in possession law and § 6105 warrant application of the [reversed] *Range* decision to this case due to the persuasive reasoning of the Third Circuit's decision. *As applied to* [Young] under the federal and Pennsylvania constitutions, § 6105 is unconstitutional due to the lack of clarity in the record as to whether the basis for the § 6105 charges is [Young's] drug conviction—which should be found unconstitutional as it was in *Quailes*[5]—or whether it was another

_____

sentences for third-degree murder, two counts of persons not to possess firearms, and aggravated assault of a police officer, and could easily have been far higher.

[4] Six days before Young filed his brief, the United States Supreme Court vacated *Range* and remanded the case for further consideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024). *See Garland v. Range*, --- U.S. ---, 144 S.Ct. 2706 (2024). On remand, the Third Circuit held the history of federal regulation of firearms possession by felons did not support depriving Range of his Second Amendment rights, under the federal "felon in possession law, 18 U.S.C.A. 922(g), based on Range's conviction of a non-violent, federal felony relating to food stamp fraud. *See Range v. Attorney General United States*, 124 F.4th 218, 232 (3d Cir. 2024) (*en banc*).

[5] *See United States v. Quailes*, 2023 WL 5401733 (M.D. Pa. 2023) (holding it is unconstitutional to ban a person with a non-violent drug possession conviction for owning a firearm). The Third Circuit subsequently reversed that

*(Footnote Continued Next Page)*

conviction. Further, the undeniable fact that mental health was involved in [Young's] possession of a firearm should be considered in [determining] whether the application of § 6105 to him was constitutional.

Young's Brief at 19-20 (emphasis added)). Young fails to provide an *Edmunds* analysis to support a claim that Pennsylvania Constitution Article I, Section 21 accords broader state constitutional protections for gun owners than the Second Amendment.[6] Accordingly, we limit our discussion to the Second Amendment of the United States Constitution.

_____

decision. *See United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025) (finding because Quailes was serving a term of parole, prohibiting such people from possessing firearms fit neatly within the principles of the Second Amendment).

[6] To support an assertion Pennsylvania law provides broader constitutional protections than federal law, litigants must:

> brief and analyze *at least the four following factors*:
>
> 1) text of the Pennsylvania constitutional provision;
>
> 2) history of the provision, including Pennsylvania case-law;
>
> 3) related cases from other states;
>
> 4) policy considerations, including unique issues of state and local concern, and applicability with modern Pennsylvania jurisprudence.

*Commonwealth v. Edmunds*, 586 A.2d 887, 895 (Pa. 1991) (emphasis added). Young does not cite the history of the Pennsylvania constitutional provision, include related cases from other states, or address policy considerations, unique issues of state and local concern, or applicability with modern Pennsylvania jurisprudence. Young has thus not demonstrated the Pennsylvania constitutional right to bear arms is broader than the right the
*(Footnote Continued Next Page)*

A defendant may seek to vacate his conviction by demonstrating that a law is unconstitutional as applied, when the application of a statute to him deprived him of a constitutional right. *See Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011). A defendant challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution. *See Commonwealth v. McCormick* 323 A.3d 1271, 1273 (Pa. Super. 2024). When reviewing a constitutional challenge, our standard of review is *de novo*, and our scope of review is plenary. *See Brown*, 26 A.3d at 493.

In *Commonwealth v. Farmer*, 329 A.3d 449 (Pa. Super. 2024), an appellant convicted of persons not to possess firearms asserted a Second Amendment challenge to section 6105 as applied to him. The *Farmer* Court provided the following summary of the Second Amendment of the United States Constitution:

> The Second Amendment governs the people's right to keep and bear arms: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

*Farmer*, 329 A.3d at 451-52, quoting U.S. Const. amend. II.

To analyze the appellant's claim, the *Farmer* Court reviewed the United States Supreme Court's prior decisions in *District of Columbia v. Heller*,

---

Second Amendment enshrines. *See Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023) (stating an appellate court will not formulate an appellant's arguments for him).

- 9 -

554 U.S. 570 (2008), and *Bruen*, *supra*, and its subsequent decision in *United States v. Rahimi*, 602 U.S. 680 (2024). *Farmer* noted *Heller* "announced a strong presumption that 'the right of the people' referenced in the Second Amendment's operative clause 'is exercised individually and belongs to all Americans.'" *Farmer*, 329 A.3d at 452, quoting *Heller*, 554 U.S. at 581. *Farmer* simultaneously recognized *Heller* "issued some qualifications as to the scope of its decision," *i.e.*, it specifically stated, "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill. . . ." *Farmer*, 329 A.3d at 452, quoting *Heller*, 554 U.S. at 626-27.

As *Farmer* stated, the *Bruen* decision enunciated a two-part test to determine the constitutionality of laws restricting gun-possession rights: 1) whether the Second Amendment covered the conduct at issue, and 2) whether the regulation at issue was consistent with the country's historical tradition of firearms regulation. *See Farmer*, 329 A.2d at 453. *Farmer* further noted *Rahimi* stated, *inter alia*, that "[f]rom the earliest days of the common law, firearms regulations have included provisions barring people from misusing weapons to harm or menace others." *See Farmer*, 329 A.3d at 454, quoting *Rahimi*, 602 U.S. at 693. *Farmer* cited *Rahimi*'s analysis of both surety laws, requiring persons to post bail if they were suspected and/or anticipated to likely misbehave (including misuse of firearms), and "going armed" laws, which prohibited people, *inter alia*, from going armed with dangerous weapons

to terrify people. *See Farmer*, 329 A.3d at 454. *Farmer* found "[n]oteworthy" the lesson *Rahimi* derived from such laws: "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another the threatening individual may be disarmed." *See Farmer*, 329 A.2d 454, quoting *Rahimi*, 602 U.S. at 698.

The *Farmer* Court then turned its attention to Section 6105, which provides:

> **(a) Offense defined**.—
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
>
> \* \* \* \*
>
> **(b) Enumerated offenses**.—The following offenses shall apply to subsection (a):
>
> \* \* \* \*
>
> Section 3701 (relating to robbery).[7]

*See Farmer*, 329 A.3d at 455, quoting 18 Pa.C.S.A. § 6105(a)(1), (b).

*Farmer* agreed the appellant satisfied the first part of the two-part *Bruen* test. It concluded, in accordance with *Rahimi*, that Farmer, a felon,

---

[7] Relevant to this case, the enumerated offenses include, *inter alia*, Section 2702 (relating to aggravated assault). *See* 18 Pa.C.S.A. § 6105(b).

was included within "the people" entitled to protection under the Second Amendment. *See Farmer*, 329 A.3d at 455-57, citing *Rahimi*, 602 U.S. at 701-02.

*Farmer* then found section 6105 consistent with this nation's historic tradition of firearms regulation and thus constitutional as applied to Farmer. In so ruling, *Farmer* noted "going armed" laws "prohibited the use of dangerous weapons to terrify people and imposed forfeiture of weaponry as punishment." *Farmer*, 329 A.3d at 457, citing *Rahimi*, 602 U.S. at 697. As to Farmer, the Court concluded, in the context of his conviction for possessing a firearm and his prior conviction for gunpoint robbery, "the experience of being robbed at gunpoint and/or the threat of being robbed at gunpoint by one convicted of having done so in the past is sufficient to cause terror." *See Farmer*, 329 A.3d at 457. The court accordingly rejected Farmer's *as applied* challenge to the constitutionality of section 6105:

> [Section] 6105 is similar to section 922(g)(8)[4] at issue in *Rahimi*, in both how—prohibition of firearms possession—and why—Appellant, based on his criminal history, poses a threat of violence—it restricts Appellant's Second Amendment right. And this, case, as distinct from both *Rahimi* and [*Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2024)], involves a criminal conviction for a felon that involved the use of a firearm. Given the United States Supreme Court's treatment of the "going armed" laws in the *Rahimi* opinion, we can safely conclude that our nation does indeed have a history and tradition of disarming people like Appellant. We therefore find that Appellant's constitutional challenge to Section 6105, on an applied basis, has no merit.
>
> [4] 18 U.S.C.A. § 922(g)(8) forbids possession of a firearm by a person subject to a domestic violence order if the order includes

a finding the person represents a credible threat to the physical safety of an intimate partner.

*Farmer*, 329 A.3d at 457.

The trial court found Young failed to articulate a claim of broader rights under the Pennsylvania constitution than the federal constitution. *See* Trial Court Opinion, 3/27/24, at 27-28. It undertook a thoughtful review of United States Supreme Court case law including *Heller*, pre-*Bruen* federal cases, *Bruen*, and the "post-*Bruen* landscape."[8] *See* Trial Court Opinion, 3/27/24, at 29-48. It then summarized the posture of the case as follows:

> Thus[,] we have arrived at the point where a lifelong felon, whose criminal history includes [a]ggravated [a]ssault of a police officer, [s]imple [a]ssault, drug trafficking, and weapons offenses and who just killed someone maliciously with a firearm, can claim that his convictions for [p]ersons [n]ot to [p]ossess and [f]irearms [n]ot to [b]e [c]arried [w]ithout a [l]icense are unconstitutional.

Trial Court Opinion, 3/27/24, at 48.[9] The court concluded Young was one of "the people" protected by the Second Amendment, "notwithstanding his history of violent crime and drug trafficking." *See id*. at 49. It then reviewed the state of the law, post-*Bruen*, and correctly anticipated both *Rahimi*'s holding supporting the constitutionality of at least temporary bans on firearms

---

[8] The Supreme Court had not decided *Rahimi* when the court wrote its opinion.

[9] We note there was a pre-sentence report in this case, which the court stated it reviewed and which we presume to be the basis of the court's discussion of Young's prior record. *See* N.T., 9/22/23, at 3, 52-55. We further note Young has failed to ensure the presence of the pre-sentence report in the certified record as was his responsibility. *See* Pa.R.A.P. 1921.

possession of those with a history of violence, and this Court's own holding in *Farmer*, *supra*, that restricting the Second Amendment rights of a felon with a prior violent history is constitutional. *See* Trial Court Opinion, 3/27/24, at 50-62.[10]

Following our review, we affirm the trial court's ruling that Young's constitutional claim has no merit. Because *Farmer* decided, post-*Bruen* and post-*Rahimi*, that restricting the Second Amendment rights of a felon with a prior violent history was constitutional, we are not free to reach a contrary result. *See Commonwealth v. Davis*, 188 A.3d 454, 457 n.2 (Pa. Super. 2018) (stating under the doctrine of *stare decisis*, a panel of this Court must adhere to the precedents this Court's prior panels have handed down). Young's prior aggravated assault of a police officer and various gun convictions demonstrated his ability to cause terror, which under *Farmer* and *Rahimi*, renders constitutional a limit on firearms possession. Thus, "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another the

---

[10] The court also distinguished the facts of *Range*, in which the appellant was banned from gun ownership under a federal statute because he had a prior, non-violent felony conviction for food stamp fraud. The court explained that Young "*is not like* Range. He is a career criminal with multiple violent crimes spanning thirty . . . years, including [a]ggravated [a]ssault of a law enforcement officer[] and firearms offenses. . . ." *See* Trial Court Opinion at 69.

threatening individual may be disarmed." ***See Farmer***, 329 A.2d 454, quoting ***Rahimi***, 602 U.S. at 698.[11]

For the foregoing reasons, we affirm Young's judgment of sentence.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/24/2025

_____

[11] Although it is not dispositive of our decision, we note that Young's assertion his mental health issues render the statute unconstitutional as applied to him, ***see*** Young's Brief at 20, appears to disregard the recognition in ***Heller*** and other cases of "longstanding prohibitions on the possession of firearms by felons and the mentally ill." ***See Farmer***, 329 A.3d at 452, quoting ***Heller***, 554 U.S. at 626-27.