J-S11018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 414 WDA 2024 |

Appeal from the Order Dated March 22, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): No. 81 of 2024

BEFORE: MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.: **FILED: June 11, 2025**

Appellant, S.W., appeals from the order entered in the Allegheny County Court of Common Pleas, Orphans' Court, which extended Appellant's involuntary commitment to inpatient mental health treatment under 50 P.S. § 7303 of the Mental Health Procedures Act ("MHPA"). We affirm.

The Orphans' Court set forth the relevant facts of this appeal as follows:

> The case began on March 14, 2024. Dr. Joshua Krivinko of Magee Women's Hospital filed a petition to involuntarily commit [Appellant]. This action was taken pursuant to Section [7302] of the [MHPA]. [Appellant] was then involuntarily committed to the Western Psychiatric Hospital in the Oakland neighborhood of the City of Pittsburgh. Section [7302] allows for commitment to be up to 5 days (120 hours).
>
> Five (5) days later, on March 19, 2024, the parties appeared before a Mental Health Hearing Officer ("MHHO"). This hearing was pursuant to Section [7303] of the MHPA. This section allows a doctor to apply for involuntary treatment for an additional 20 days. That hearing was recorded by

electronic means.[1]  At the end of the proceeding, the MHHO found sufficient reasons to extend [Appellant's] stay.

The next day, counsel for [Appellant] petitioned the Court of Common Pleas to review that decision.  On March 22, 2024, the parties appeared.  In essence, it is an appeal from the MHHO's decision.  This "appeal" began with playing the entire audio/video recording of the proceeding before the MHHO.  After both lawyers listened to, and watched, the tape recording, the court heard an argument from a solicitor from Allegheny County [Department of Human Services ("DHS")].  She advocated for a stay of 20 days.  Counsel for [Appellant] had her client testify.  [Appellant] responded to questions from her lawyer and then engaged in a discussion with the court.

(Orphans' Court Opinion, filed 8/27/24, at 1-2) (internal citations and footnote omitted).  At the conclusion of the hearing, the court upheld the MHHO's ruling to extend Appellant's involuntary commitment.  In reaching its decision, the court relied on the opinions from Dr. Crystal White, a member of Appellant's treatment team at Western Psychiatric Hospital, who testified at the March 19, 2024 hearing.

Appellant timely filed a notice of appeal on April 8, 2024.  On April 25, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Appellant timely complied.

On appeal, Appellant raises one issue for this Court's review:

Whether the evidence was sufficient to extend [Appellant's] involuntary civil commitment to Western Psychiatric Hospital where [DHS] failed to prove, through clear and

---

[1] The video recording of the hearing was not included with the certified record on appeal.  Nevertheless, as discussed *infra*, the certified record includes the transcript of the March 19, 2024 hearing.

convincing evidence, that [Appellant] posed a clear and present danger of harm to herself such that she needed continued involuntary treatment?

(Appellant's Brief at 4).[2]

On appeal, Appellant insists that DHS failed to provide clear and convincing evidence to prove that Appellant was a clear and present danger to herself. Appellant asserts that DHS failed to demonstrate that Appellant's mental illness left her unable to care for herself or satisfy her basic needs. Appellant also contends that DHS's witnesses did not explain why Appellant's involuntary commitment was the least restrictive means of treatment. Appellant acknowledges Dr. White's testimony that: 1) Appellant lived in a house that lacked running water; and 2) Appellant's financial situation left her unable to obtain sufficient food. Nevertheless, Appellant argues that Dr. White "offered no psychiatric-based reasons as to why the least restrictive treatment option for [Appellant] was to be involuntarily civilly committed to a hospital." (**Id.** at 11). Appellant maintains that "Dr. White's testimony merely provided her personal opinions, rather than one based on her expertise as [Appellant's] treating psychiatric doctor." (**Id.** at 19). Appellant concludes that this Court

---

[2] It is unclear from the record whether Appellant remains committed. We emphasize, however, that cases involving involuntary commitment proceedings under the MHPA satisfy an exception to the mootness doctrine. **See In re J.G.**, 320 A.3d 1286, 1290 (Pa.Super. 2024) (explaining that one exception to mootness doctrine involves repeatable issues that are likely to evade appellate review; legal questions regarding Section 7303 determinations may evade appellate review due to time-sensitive nature of Section 7303 petitions).

must reverse the order extending her involuntary commitment pursuant to Section 7303. We disagree.

"In reviewing a court order for involuntary commitment, we must determine whether there is evidence in the record to justify the court's findings." ***In re S.O.***, 311 A.3d 1132, 1135 (Pa.Super. 2024), *appeal denied*, ___ Pa. ___, 323 A.3d 1271 (2024) (internal quotation marks omitted). "Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." ***Id.*** (quoting ***In re S.M.***, 176 A.3d 927, 935 (Pa.Super. 2017)).

The MHPA governs involuntary commitments as follows:

> **§ 7301. Persons who may be subject to involuntary emergency examination and treatment**
>
> **(a)      Persons Subject.**—Whenever a person is severely mentally disabled and in need of immediate treatment, [s]he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, [her] capacity to exercise self-control, judgment and discretion in the conduct of [her] affairs and social relations or to care for [her] own personal needs is so lessened that [s]he poses a **clear and present danger** of harm to others or to [herself], as defined in subsection (b), or the person is determined to be in need of assisted outpatient treatment as defined in subsection (c).
>
> **(b)      Determination of Clear and Present Danger.—**
>
> *          *          *
>
> (2)   Clear and present danger to [herself] shall be shown by establishing that within the past 30 days:
>
>> (i)    the person has acted in such manner as to

- 4 -

> evidence that [s]he would be unable, without care, supervision and the continued assistance of others, to satisfy [her] need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act[.]

50 P.S. § 7301(a), (b)(2)(i) (emphasis added).

"Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination[.]" 50 P.S. § 7302(a). "A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301(b) and in need of immediate treatment." 50 P.S. § 7302(b) (footnote omitted). "Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section [7302] whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours." 50 P.S. § 7303(a) (footnote omitted).

> Relevant hereto, [Section 7303] provides that application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to § 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. In order to support such a commitment, DHS must present clear and convincing evidence of the need. We have observed that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections.

*In re. S.O., supra* at 1135 (internal citations and quotation marks omitted).

Instantly, the Orphans' Court found clear and convincing evidence that Appellant posed a clear and present danger to herself, and an extension of her involuntary commitment was warranted. In its opinion, the Orphans' Court explained that this case started when Appellant went to Magee Women's Hospital because she did not have money for food. The court then summarized the evidence from the March 19, 2024 hearing as follows:

> While she was fed and enjoyed the nutrition provided, deeper issues were going on. [DHS's] evidence looked behind the curtain and provided medical-based opinions from two professionals. These opinions were not just opinions untethered to the facts. Dr. Krivinko informed the court that [Appellant's] laboratory results were not normal. The labs showed markers for when people begin to starve themselves. He also relayed that [Appellant] was delusional. This conclusion was reached after she explained the large sums of money she spends on hotels to escape the presence of a man who has been stalking her. It was Dr. Krivinko's view that [Appellant] could die of starvation if she were released.
>
> Dr. Crystal White also provided evidence. She diagnosed [Appellant] as suffering from an unspecified psychotic disorder. That, according to Dr. White was a severe mental illness. Dr. White found her patient to suffer from delusions which negatively impact her ability to discern how her finances should be spent. Those delusions center upon a man who has been stalking her for years. Also contributing are [Appellant's] disclosures about her house and how it does not have running water. Most significantly, Dr. White discovered a pattern of behavior. A few months before being admitted to a Western [Psychiatric] Hospital, [Appellant] reported to a North Carolina hospital complaining of eating issues and financial woes. Dr. White's biggest concern is that this behavior—now the second occurrence in a 3-month window—would repeat itself. To

> help reduce that possibility, Dr. White wanted to take the time to begin a medication trial with [Appellant]. The goal of the medicine would be to bring an enhanced level of clarity to [Appellant's] thoughts while simultaneously reducing the delusions. Dr. White felt elongating the stay and allowing the drug trial to have an impact was the least restrictive alternative.

(Orphans' Court Opinion at 4) (record citation omitted). Our review of the record confirms the court's conclusions.

Contrary to Appellant's arguments, Dr. White did not offer mere personal opinions regarding Appellant's condition. Rather, the transcript reveals that Dr. White's testimony was based upon her observations as a member of Appellant's treatment team at Western Psychiatric Hospital. (**See** N.T. Hearing, 3/19/24, at 8). We emphasize that Dr. White reviewed Appellant's medical records and discovered that Appellant's gambit of presenting to hospitals in search of food predated her visit to Magee Women's Hospital in March 2024. (**See id.** at 8-9). Dr. White feared that Appellant had fallen into a pattern of having difficulty with obtaining food. Dr. White wanted Appellant "to stay in the hospital and try medication," noting that Appellant "has not been taking [medication] here." (**Id.** at 10).

Moreover, the Orphans' Court received testimony from Appellant at the March 22, 2024 hearing, and it deemed this testimony incredible.

> [T]he believability meter did not point in favor of [Appellant]. This interaction was quite supporting of the medical professionals' opinion that the delusions [Appellant] suffers from negatively impact her ability to care for herself in terms of nourishment. The totality of this evidence convinced this court that, if intervention by way of a longer

> hospital stay did not take place, [Appellant] would be at risk
> of starving herself to death.

(Orphans' Court Opinion at 5). After reviewing Appellant's testimony, we conclude that the record does not provide us with a basis to disturb the Orphans' Court's credibility determination. *See In re A.J.B.*, 797 A.2d 264, 266 (Pa.Super. 2002) (stating: "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion"). Based upon the foregoing, we affirm the order extending Appellant's involuntary commitment. *See In re. S.O., supra*.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/11/2025